**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| VIANN'K MANSUR, LLC, | § | |
| | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:23-cv-2914 |
| | § | |
| JACQUELINE ESPINOZA and | § | |
| ESTILOISABELLA, LLC, | § | |
| | § | |
| *Defendants.* | § | JURY TRIAL DEMANDED |
| | § | |

**ORIGINAL VERIFIED COMPLAINT, APPLICATION FOR EMERGENCY TEMPORARY RESTRAINING ORDER, AND REQUEST FOR INJUNCTIVE RELIEF**

Plaintiff, VIANN'K MANSUR LLC ("Plaintiff" or "VKM") hereby files this Original Verified Complaint, Application for Emergency Temporary Restraining Order, and Request for Injunctive Relief against Defendants JAQUELINE ESPINOZA ("Espinoza") and ESTILOISABELLA LLC ("Estilo") (collectively, "Defendants"), and would respectfully show the Court as follows:

**PRELIMANARY STATEMENT**

1.      This is an action for infringement of Plaintiff's federally registered copyright in the works "Leonora" and "Maroon/Purple Dress with Golden Train Accents" (the "Copyrighted Dresses") under 15 U.S.C.§ 501; for federal unfair competition, false designation of origin, and false advertising under Section 43(a) of the Lanham Act, 15 U.S.C.A § 1125(a); and for substantial and related claims of unfair competition under the common laws of the State of Texas, arising from Defendant's unauthorized use of Plaintiff's trade and service marks while advertising its own products.

Page **1** of **30**          *Plaintiff's Original Verified Complaint;*          *Case No. 4:23-cv-2914*
                    *Application for Temporary Restraining*
                    *Order and Request for Injunctive Relief*

2. Plaintiff seeks all remedies afforded by the Copyright Act, including preliminary and permanent injunctive relief, Plaintiff's damages and Defendant's profits from Defendant's willfully infringing conduct, and other monetary relief.

3. Plaintiff seeks all remedies afforded by the Lanham Act, including preliminary and permanent injunctive relief, Plaintiff's actual damages and Defendant's profits from Defendant's infringing conduct, and other monetary relief.

## PARTIES

4. Plaintiff VIANN'K MANSUR, LLC is a limited liability company formed and existing under the laws of TEXAS, with its principal place of business in Houston, Harris County, Texas.

5. Defendant JACQUELINE ESPINOZA ("Espinoza") is an individual residing in Rosenberg, Texas, and may be served with process at 1315 Wilson Dr., Rosenberg, Texas 77471, or wherever she may be found.

6. ESTILOISABELLA LLC, ("Estilo") is a limited liability company formed under the existing laws of the State of Texas, with its principal place of business at 3718 Mount Vernon St., Houston, Texas 77006. Estilo may be served through its registered agent Jaqueline Espinoza at 1315 Wilson Dr., Rosenberg Texas 77471, or wherever it may be found.

## JURISDICTION AND VENUE

7. This action arises in substantial part under the copyright and trademark laws of the United States, 15 U.S.C. § 101, *et seq.*, and 17 U.S.C. § 1051, *et seq.*, respectively.

8. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, and pursuant to the principles of supplemental jurisdiction under 28 U.S.C. § 1367.

*Plaintiff's Original Verified Complaint;*      *Case No. 4:23-cv-2914*
                                   *Application for Temporary Restraining*
                                   *Order and Request for Injunctive Relief*

9.      The Court has personal jurisdiction over Defendants because they each reside and conduct business in Texas. In addition, Defendants' unlawful conduct is taking place within this judicial district.

10.     Venue is proper in this district under 28 U.S.C § 1391(b)(1) because the Defendants reside in this district; 28 U.S.C § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this judicial district; and under 28 U.S.C. § 1400(a) because Defendants may be found in this district.

## FACTUAL BACKGROUND

11.     This case involves the infringement of Plaintiff VKM's intellectual property in connection with the design, manufacture, reproduction, promotion, and sale of quinceañera dresses. Pursuant to Federal Rule of Civil Procedure 65(b), Plaintiff's factual allegations as set forth herein are verified through the unsworn declaration of Vianney de Aquino Chalchi which is attached hereto as Exhibit A and incorporated herein by reference for all purposes.

### A.      The Lavish and Storied History of Quinceañera Celebrations

12.     A tradition throughout Mexico, Latin America, the Caribbean, Europe, and the United States, a "quinceañera" is a celebration marking a young women's transition to adulthood.

13.     On her 15th birthday a young woman is designated the "Quinceañera" and her family and community—in some cases literally—treat her like a princess for her special day.

14.     While the traditions of a quinceañera celebration vary throughout the world, two constants are the Quinceañera's theme and dress.

15.     A Quinceañera's selected theme influences every part of the celebration; from the final design of her dress and the look and feel of the reception, to the selected dance numbers.

Page **3** of **30**            *Plaintiff's Original Verified Complaint;*            *Case No. 4:23-cv-2914*
*Application for Temporary Restraining*
*Order and Request for Injunctive Relief*

Typical quinceañera themes include favorite films—Disney Princess films are common—color, or historic period.

16.    A Quinceañera's dress is second only to her selected theme. The design and display of the Quinceañera's dress is a major focal point of the modern quinceañera celebration, especially in the United States and Mexico. Talented dress designers incorporate the theme and the individual style of a Quinceañera into a one-of-a-kind dress fit for a princess. Once she selects her theme and accompanying dress design everything else follows; including the outfits worn by her "Court of Honor" and family which are designed to complement her dress.

17.    Modern quinceañera dresses incorporate dazzling colors and patterns applied to a classic ball gown silhouette. Traditionally, quinceañera dresses feature a constricted low-cut neckline bustier, bared arm, and long full skirts. However, modern dress designers offer a variety of styles to best match the wishes of a Quinceañera on her special day.

18.    Quinceañera dresses are further distinguishable from cotillion, debutante, and other kinds of dresses by the distinctive patterns of carefully arranged sparkling sequins, rhinestones, and fabrics to create traditional and modern designs and ornamental features unique to the celebration.

19.    In Mexico and the United States quinceañera celebrations are extravagant affairs that often rival weddings in cost and grandeur. Families spend years saving and planning to celebrate their Quinceañera on her special day. As an example, a custom quinceañera dress regularly costs, and sometimes exceed, between five thousand ($5,000) and eight thousand ($8,000) U.S. dollars.

*Plaintiff's Original Verified Complaint;*                *Case No. 4:23-cv-2914*
                *Application for Temporary Restraining*
                *Order and Request for Injunctive Relief*

**B.     Viann'K Mansur's Is a Custom Quinceañera Dress Design Company.**

20.     For over twenty (20) years, Vianney de Aquino Chalchi ("Aquino"), through her companies, has designed, crafted, tailored, and delivered custom quinceañera dresses in the United States and Mexico.

21.     Aquino began honing her fashion skills and distinct style in her hometown of Mexico City, Mexico. Aquino received practical skills in design by working with recognized fashion designers throughout Mexico to create custom dresses for Mexico's elite.

22.     In 2009, Aquino formed Viann'K Mansur and applied her skills to the design of custom dresses for quinceañera celebrations in Mexico, crafting one-of-a-kind dresses for young women throughout the country.

23.     Eventually, the demand for Aquino's work expanded to the United States.

24.     In 2014, Aquino and her business partner Jose de Jesus Rico Sandavol ("Sandavol") formed Viann'K Mansur LLC, a Texas limited liability company, to advertise, solicit, offer, and sell her custom dress designs and services in the United States. VKM employs a team of tailors, designers, and administrators all working under Aquino as head designer.

25.     Plaintiff offers its quinceañera dresses and Aquino's custom dress design services under the trademark "VIANN'K MANSUR" (the "Plaintiff's Mark").

26.     VKM began using Plaintiff's Mark in commerce at least as early as March 1, 2014, and has used Plaintiff's Mark exclusively and continuously since that date in connection with the manufacture, distribution, provision, offering for sale, sale, marketing, advertising, and promotion of custom quinceañera dresses. Since first adopting Plaintiff's Mark in the United States in 2014, VKM has designed and sold hundreds of custom quinceañera dresses for young women celebrating their quinceañeras in the United States.

Page **5** of **30**          *Plaintiff's Original Verified Complaint;*          *Case No. 4:23-cv-2914*
          *Application for Temporary Restraining*
          *Order and Request for Injunctive Relief*

27. VKM advertises, distributes, and sells custom quinceañera dresses and dress design services under Plaintiff's Mark at Dress Expos across the United States, through Plaintiff's own social media accounts, and through Plaintiff's retail outlet located in Houston, Texas.

28. The services and goods offered under Plaintiff's Mark are of high quality. Each custom dress incorporates a Quinceañera's chosen theme through the distinctive use of fabrics, color, dimensions, and adornments. Each VKM dress is made to suit a specific quinceañera theme and celebration, and each dress typically costs more than five thousand U.S. dollars ($5,000.00).

29. Aquino, VKM, and the custom dresses they create and sell under the Mark have been profiled in multiple fashion news outlets for Aquino's exceptional attention to detail, work ethic, and skill. As a result, the "Viann'K Mansur" brand has become famous in the United States.

**C.     The Story of A VKM Dress From Start to Finish.**

30. Each custom dress sold by VKM combines the skills and style of Aquino with the unique vision of a Quinceañera. The design and creation of a custom VKM dress begins months before the Quinceañera's big day and goes through multiple stages.

31. The first stage of a VKM dress begins with an appointment. The Quinceañera will decide the color of her dress, the color of the adornments, the patterns and stones used as adornments, and the length of the dress train during her in store appointment. Special requests and additions may also be made depending on the vision of the Quinceañera.

32. Typically, a Quinceañera arrives at her appointment with a vision of her dress already formed. The Quinceañera has found inspiration for her dress from seeing other custom VKM dresses featured in social media posts from her peers and VKM. The primary purpose of an appointment is to allow the Quinceañera and her family to see dress designs in person and to test the weight of a dress when worn. The appointment is also the point at which measurements will

Page **6** of **30**     *Plaintiff's Original Verified Complaint;*     *Case No. 4:23-cv-2914*
*Application for Temporary Restraining*
*Order and Request for Injunctive Relief*

be made to craft a perfectly fitting dress. The appointment is also the first time the Quinceañera and her family get to see a version of the dress they have spent years planning and saving for.

33.    At the conclusion of an appointment a VKM employee will confirm the Quinceañera's choices were correctly recorded and collect the required downpayment of ONE THOUSAND EIGHT HUNDRED U.S. dollars ($1,800.00). After the downpayment is made, the first stage of the three-stage manufacturing process begins.

34.    The Quinceañera's dress order is sent to VKM's specialized manufacturer in Mexico. VKM's manufacturer takes at least a month creating the ball gown silhouette to the Quinceañera's measurements that will serve as the "structure" of the Quinceañera's one-of-a-kind dress.

35.    Once the Structure is complete it is sent to Houston for the second stage of the process. The Structure is adorned with hand crafted fabric arrangements selected by the Quinceañera. It is during this stage that the skills and style of Aquino and the unique vision of the Quinceañera begin to merge.

36.    The final stage of the manufacturing process is dedicated to the arrangement and adornment of the Structure with the sequins and stones selected by the Quinceañera. The color and shape of the stones are determined by the Quinceañera, but the final arrangement is truly one of a kind and dictated by Aquino and the VKM staff.

37.    At the end of the manufacturing process, VKM staff notifies the Quinceañera and her family that the dress is ready a final try-on date is scheduled at VKM's showroom. Any required light tailoring or alterations are completed during the final try-on.

Page **7** of **30**                    *Plaintiff's Original Verified Complaint;*                    *Case No. 4:23-cv-2914*
                                        *Application for Temporary Restraining*
                                        *Order and Request for Injunctive Relief*

38.    Before the dress goes home with the Quinceañera the remaining balance of the dress is paid-off. After months of patience the Quinceañera leaves VKM with a one-of-a-kind garment fit and finished to suit her special day.

**D.    VKM Designs the "Leonora" and Gold Train Dress.**

39.    On or about August 2021, VKM designed the "Leonora" dress.

40.    The "Leonora" dress features, *inter alia*, an original and distinctive arrangement of fabric and sequins along the hem and bustier of a ball gown silhouette. The fabric and sequin arrangement appears as flowers on a baby blue dress. A fair and accurate depiction of the "Leonora" dress is attached hereto as Exhibit 1 and provided below.



41.    On or about September 2019, Plaintiff designed an untitled purple dress with golden train accents (hereinafter the "Golden Train Dress").

Page **8** of **30**                    *Plaintiff's Original Verified Complaint;*                    *Case No. 4:23-cv-2914*
                                        *Application for Temporary Restraining*
                                        *Order and Request for Injunctive Relief*

42.     The Golden Train Dress features, *inter alia*, an original and distinctive arrangement of golden fabric along the train and hem of the dress. A fair and accurate depiction of the "Golden Train Dress" is attached hereto as Exhibit 2 and provided below.



43.     The distinctive design and ornamental features of VKM's Lenora and Golden Train quinceañera dresses are recognized as original works of authorship eligible for copyright protection in the United States.

44.     Plaintiff is the owner and holder of Copyright Registration Numbers Vau001499071 and VAu001499074 for the Leonora and Golden Train Dress, respectively. True and correct copies of the registration certificates are attached hereto as Exhibit 3 and incorporated herein by reference for all purposes.

45.     Plaintiff is the holder of the exclusive rights under the Copyright Act of 1976 (17 U.S.C. §§ 101 *et. seq.*, and all amendments thereto) (the "Copyright Act") to reproduce, distribute,

Page **9** of **30**               *Plaintiff's Original Verified Complaint;*               *Case No. 4:23-cv-2914*
*Application for Temporary Restraining*
*Order and Request for Injunctive Relief*

display, or license the reproduction, distribution, and/or display of its works, listed on Exhibit 3 which is the subject of this action (referred to herein as the "Copyrighted Dresses") throughout the United States.

46.     VKM has never licensed any of the rights afforded to it under the Copyright Act for the Lenora or Golden Train Dresses to any individual or entity.

**E.     Previous Business Relationship Between Plaintiff and Defendant**

47.     In 2014, Defendant Espinoza was a photographer based in the United States that was well known within the quinceañera industry.

48.     For the first several months after establishing VKM in the United States, the company remained a cross-border operation. Though its principal offices remained in Mexico City, Mexico, it understood the need to promote directly in the United States, especially at expos, conferences, and conventions dedicated to quinceañera celebrations.

49.     On July 30, 2014, VKM hired Espinoza as an employee to act as VKM's sales representative in the United States. In connection with that employment, VKM provided a license to Espinoza to sell VKM's dresses and solicit business on VKM's behalf. A true and correct copy of the licensing agreement between Espinoza and VKM is attached hereto as Exhibit 4 and incorporated herein by reference for all purposes.

50.     As the United States representative of VKM, Espinoza was responsible for sales, advertising, business administration, and delivery of VKM products in the United States. Espinoza would send client order forms, deposits, and final payments to the Plaintiff through Aquino or Jose de Jesus Rico Sandoval ("Sandoval")

Page **10** of **30**     *Plaintiff's Original Verified Complaint;*          *Case No. 4:23-cv-2914*
*Application for Temporary Restraining*
*Order and Request for Injunctive Relief*

51.     Espinoza's sales responsibilities included finding customers, attending quinceañera dress expos and conventions on behalf of VKM, and guiding customers through the dress ordering process.

52.     To complete a dress order form VKM's US clients would review Plaintiff's dress catalog. A client would then select a dress to serve as the starting point for a custom dress. Espinoza would then take down customers measurements, and design requests.

53.     Every decision made by a client was recorded on a physical order form by Espinoza.

54.     Espinoza submitted completed dress order forms through email to Sandoval.

55.     As the licensed US agent of VKM, Espinoza received the completed dresses of the Plaintiff and was tasked with creating print catalogs displaying VKM offerings. Espinoza never created any print catalogs of the Copyrighted Dresses.

56.     Espinoza had no role in the actual design or creation of any VKM dresses during her time as an employee of Plaintiff.

57.     On or about, January 2016, Espinoza was terminated as an employee of Plaintiff for inappropriate conduct.

58.     Upon information and belief, thereafter Espinoza expanded her photography business to include quinceañera dress design and manufacturing services under the brand Estilo Isabella.

**F.     Espinoza and Estilo Isabella's Infringing Conduct.**

59.     Upon information and belief, on June 15, 2016, Espinoza created a Facebook Business account under the name Experts Event Planning. A true and correct copy of the Facebook Page transparency information of Defendants' Estilo Isabella Facebook account is attached hereto as Exhibit 5 and incorporated herein by reference for all purposes.

Page **11** of **30**          *Plaintiff's Original Verified Complaint;*          *Case No. 4:23-cv-2914*
*Application for Temporary Restraining*
*Order and Request for Injunctive Relief*



60.     Upon information and belief, on August 16, 2016, Espinoza began offering "exclusive" dresses through the Experts Event Planning Facebook Business account. A true and correct copy of the Defendant's first Facebook post offering dresses is attached hereto as Exhibit 6 and incorporated herein by reference for all purposes.

61.     Upon information and belief, on February 6, 2017, Espinoza changed the name of the Experts Event Planning Facebook Business account to Estilo Isabella & Experts Event Planning.

62.     Estilo Isabella & Experts Event Planning is a predecessor in interest to Defendant Estilo.

63.     Espinoza advertised and continues to advertise the Estilo business on multiple social media platforms including Facebook, Instagram, Tik-Tok, Pinterest, and YouTube.

64.     Espinoza further advertises the Estilo business through various quinceañera dress expos and conventions throughout the United States.

65.     Upon information and belief, Defendants presently control and, at all times relevant to this suit, previously controlled social media accounts on Facebook, Instagram, Tik-Tok, YouTube, and Pinterest. Defendants operate these respective social media accounts to advertise the goods and services offered through the Estilo business.

66.     Upon information and belief, Espinoza controls and at all times relevant to this suit, previously controlled social media accounts using, at a minimum, the platform handles "estiloisabella," "estiloisabella1554," and/or "esiloisabella15."

67.     Upon information and belief, Defendants, or those acting in concert with them, prepared at least two reproductions of the Plaintiff's "Leonora" dress (collectively the "Infringing Leonora Dress"). Both reproductions featured distinctive pink fabric floral patterns arranged along the hem of a baby blue dress with a distinctive arrangement of sequins on the bustier of the dress.

68.     Defendants then display and continue to display the "Infringing Leonora Dress" in multiple social media advertisements and posts. Many of the social media advertisements allege the Infringing Leonora Dress was created and designed by the Plaintiff.

69.     Upon information and belief Defendants brought the Infringing Leonora Dress to quinceañera expositions and/or trade shows and displayed the dresses in connection with the Estilo Isabella trade name.

70.     Upon information and belief, Defendants, or those acting in concert with them, prepared a reproduction of the Plaintiff's Golden Train Dress (the "Infringing Gold Train Dress.")

Page **13** of **30**                    *Plaintiff's Original Verified Complaint;*                 *Case No. 4:23-cv-2914*
                                        *Application for Temporary Restraining*
                                        *Order and Request for Injunctive Relief*

71.     Defendants then displayed the Infringing Gold Train Dress in social media advertisements and posts.

72.     On or about May 29, 2021, Espinoza posted a picture of the Infringing Gold Train Dress to the estiloisablla15 Instagram account and the Estilo Isabella Facebook page. A true and correct copy of the infringing Facebook post is attached hereto as Exhibit 7, incorporated herein by reference, and reproduced below.



73.     On October 8, 2022, Espinoza uploaded a video to the Estilo Isabella Tik Tok account. The video prominently displayed the Infringing Leonora Dress and offered it as a "viannk manzur exclusive," available from Estilo for NINE HUNDRED DOLLARS ($900.00). Espinoza even tagged the video with "viannkmenser" a stylization of the Plaintiff's Mark. A true and correct

Page **14** of **30**            *Plaintiff's Original Verified Complaint;*            *Case No. 4:23-cv-2914*
                                      *Application for Temporary Restraining*
                                      *Order and Request for Injunctive Relief*

copy of a screen capture of the infringing video is attached hereto as Exhibit 8, incorporated herein by reference, and reproduced below.



74.    On December 24, 2022, Espinoza posted a TikTok video prominently displaying the Infringing Leonora Dress. The TikTok Video features text claiming over twenty-two (22) orders for the Infringing Leonora Dress have been made. A true and correct copy of a screen capture from Defendants' December 24, 2022 TikTok featuring the aforementioned text is attached hereto as Exhibit 9 and incorporated herein by reference for all purposes.

*Plaintiff's Original Verified Complaint;*    *Case No. 4:23-cv-2914*
*Application for Temporary Restraining*
*Order and Request for Injunctive Relief*

75. On January 6, 2023, Espinoza reposted the December 24, 2022, Tik Tok video to YouTube. The YouTube video, like the Tik Tok video, prominently displayed the Infringing Leonora Dress.

76. In February 2023, Defendants posted a video to YouTube documenting the Infringing Leonora Dress on display at a quinceañera dress expo attended by the Defendants.

77. On February 18, 2023, Defendants displayed the Infringing Leonora Dress on the Estilo Facebook business page. A true and correct copy of Defendants' Facebook post is attached as Exhibit 10, incorporated herein by reference, and reproduced below.



*Plaintiff's Original Verified Complaint;* *Case No. 4:23-cv-2914*
*Application for Temporary Restraining*
*Order and Request for Injunctive Relief*

78.   On July 19, 2023, Defendants displayed a "mini" version of the Infringing Leonora Dress on its Facebook business page. A fair and accurate depiction of the dress as it appears in the Facebook post is attached as Exhibit 11, incorporated by reference herein, and reproduced below.



79.   On the same day, the mini version of the Infringing Leonora Dress was also posted to the Estilo Isabella Instagram account, and references Jersson Luna Photography Studio as the photographer. One day earlier, on July 18, 2023, the Instagram account @jerssonlunaphotographystudio, tagged in Estilo Isabella's post of the mini version of the Infringing Leonora Dress, posted a different photograph of the same infringing dress to its own Instagram account. A fair and accurate depiction of the Jersson Luna Photography Studio post, dated July 18, 2023, featuring the mini version of the Infringing Leonora Dress is attached hereto as Exhibit 12 and incorporated herein by reference for all purposes.

*Plaintiff's Original Verified Complaint;*   *Case No. 4:23-cv-2914*
*Application for Temporary Restraining*
*Order and Request for Injunctive Relief*

80.     Plaintiff, therefore, Complains of Defendants Espinoza and her company Estilo. In addition to recover for VKM's claims of copyright infringement, trademark infringement, and unfair competition, VKM seeks injunctive relief against Defendants to enjoin the continued infringement, and to recover money damages and attorneys' fees.

## NECESSITY OF EX-PARTE RELIEF

81.     Defendants have utilized improper means to obtain Plaintiffs' property and have flagrantly continued to alter, display, offer, use, and distribute it for their own financial benefit. The dress designs and infringing products are highly mobile and can be removed or hidden with even a brief notification. The posts on social media platforms can be easily deleted without recourse. On multiple occasions, Defendants have posted displays and commercial offerings of the Infringing Dresses on so-called "live streams," which are not retained on any public or private servers The result is that Defendants intentionally promote, offer, and sell the Infringing Dresses and the evidence is immediately destroyed or may be easily destroyed or sequestered with even an hour's notice. Therefore, Plaintiffs seek *ex parte* relief so that the designs, physical embodiments of the designs (the dresses), and the images and videos retained on Defendants' social media accounts can be retrieved by an authorized constable or law enforcement officer until an appropriate hearing on the merits of Plaintiffs' claims may be held.

## FIRST CLAIM FOR RELIEF
### COPYRIGHT INFRINGEMENT
### (17 U.S.C. § 501 *et seq.*)

82.     Plaintiff alleges and incorporates by reference the allegations set forth in paragraphs 1 through 81 hereof, as if fully set forth herein.

83.     The Copyrighted Dresses are original works containing copyrightable subject matter for which copyright protection exists under the Copyright Act, 17 U.S.C. § 101, et. seq.

*Plaintiff's Original Verified Complaint;*                 *Case No. 4:23-cv-2914*
                                         *Application for Temporary Restraining*
                                         *Order and Request for Injunctive Relief*

Plaintiff is the exclusive owner of rights under copyright in and to the Copyrighted Dresses. Plaintiff owns a valid copyright registration for the Copyrighted Dresses, attached as Exhibit 3.

84.    Defendants had access to the Plaintiff's Copyrighted Dresses through online catalogs and social media advertisements featuring the Leonora and Gold Train Dress.

85.    Upon information and belief, Defendants gained additional access to the Plaintiff's dresses by sending potential customers of the Defendants to try on the Plaintiff's dresses and take photos, that Defendants would use to duplicate the Plaintiff's dresses.

86.    Defendant's Infringing Dresses are substantially similar to the Plaintiff's Copyrighted Dresses.

87.    Defendants' Infringing Leonora Dress features the same pink flower fabric patterns arranged along the hem of a blue dress. Additionally, the Infringing Leonora Dress features an arrangement of similar colored sequins to create the same pattern featured on the bustier of the Plaintiff's Leonora.

88.    Defendants violated the Plaintiff's exclusive right of reproduction when the Defendants, without permission or license, had the Infringing Leonora Dress manufactured.

89.    Defendants violated the Plaintiff's exclusive right to public display when the Defendants used images of the Infringing Leonora Dress and Infringing Gold Train Dress to advertise the Defendants' business across multiple social media platforms.

90.    Defendants violated the Plaintiff's exclusive right to create derivatives when the Defendants reproduced the Copyrighted Dresses. Specifically, Defendants violated the Plaintiff's exclusive right to create derivatives of the Leonora dress on two occasions.

91.    Through Defendants conduct alleged herein, Defendants violated the Plaintiff's exclusive right to:

Page **19** of **30**          *Plaintiff's Original Verified Complaint;*          *Case No. 4:23-cv-2914*
                        *Application for Temporary Restraining*
                        *Order and Request for Injunctive Relief*

a.   Reproduce the works in copies, in violation of 17 U.S.C. §§ 106(1) and 501;

b.   Redistribute copies of the works to the public by sale or other transfer of ownership, or by rental, lease or lending, in violation of 17 U.S.C. §§ 106(3) and 501;

c.   To prepare derivative works based upon the copyrighted work, in violation of 17 U.S.C. §§ 106(2) and 501;

d.   Display the copyrighted works, in violation of 17 U.S.C. §§ 106(5) and 501, by showing individual images of the works and transmitting said display of the works by means of a device or process to members of the public capable of receiving the display (as set forth in 17 U.S.C. § 101's definition of "publicly" display).

92.   Defendants' infringing conduct alleged herein was willful and with full knowledge of Plaintiff's rights in the Copyrighted Dresses and has enabled Defendant illegally to obtain profit therefrom.

93.   Pursuant to 17 U.S.C. § 504(b), Plaintiff is entitled to recover its actual damages, and all profits Defendant has made because of its wrongful conduct.

94.   Alternatively, pursuant to 17 U.S.C. § 504(c), Plaintiff is entitled to statutory damages between $750 and $30,000 per infringed work and up to $150,000 per infringed work because of Defendant's willful and intentional conduct.

95.   Pursuant to 17 U.S.C. § 505, Plaintiff requests an award of its full attorney fees and costs.

## SECOND CLAIM FOR RELIEF
### FEDERAL UNFAIR COMPETITION, FALSE DESIGNATION OF ORIGIN, AND FALSE ADVERTISING
(15 U.S.C. §1125(a))

96.   Plaintiff repeats and realleges paragraphs 1 through 95 hereof, as if fully set forth herein.

*Plaintiff's Original Verified Complaint;*                    *Case No. 4:23-cv-2914*
                                                                *Application for Temporary Restraining*
                                                                *Order and Request for Injunctive Relief*

97.     This claim for relief arises under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and is alleged against all Defendants.

98.     Defendants' unauthorized use of the similar "Viann K Mansur" and "Viankita," mark, falsely indicates to consumers that Defendants' dress design services and custom quinceañera dress goods originate from, are approved by, are sponsored by, are licensed by, or are affiliated with Plaintiff or are otherwise associated with Plaintiff's dress design services or custom quinceañera dress goods.

99.     Defendants' unauthorized use of the similar name to "Viann K Mansur" mark in the social media posts described above is likely to cause confusion, to cause mistake, or to deceive the public into believing Defendant's goods and services originate from or are associated with Plaintiff.

100.    Defendants' infringement has been intentional and willful, constituting, an exceptional case pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 117. Plaintiff is therefore entitled to recover three times the amount of: (1) Defendants' profits; and (2) Plaintiff's actual damages, including pre-judgment interest. Plaintiff is further entitled to recover its attorney fees and costs incurred in this action.

101.    Defendants' unauthorized use of the similar name to the Mark removes from Plaintiff the ability to control the nature and quality of the goods and services provided under the Mark and places the valuable reputation and goodwill of Plaintiff in the hands of the Defendants.

102.    Plaintiff's mark is entitled to strong protection under Section 43(a) of the Lanham Act because such mark when used to identify custom quinceañera dresses and quinceañera dress design services, is "arbitrary" as to such goods and services, and because Plaintiff has extensively promoted the mark to the relevant public.

Page **21** of **30**     *Plaintiff's Original Verified Complaint;*     *Case No. 4:23-cv-2914*
*Application for Temporary Restraining*
*Order and Request for Injunctive Relief*

103.    Defendant's conduct as alleged herein constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

104.    Defendant's conduct as alleged herein is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this court. Plaintiff has no adequate remedy at law.

105.    Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendant's profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

### THIRD CLAIM FOR RELIEF:
#### COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

106.    Plaintiff repeats and realleges paragraphs 1 through 105 hereof, as if fully set forth herein.

107.    Defendants' act, as alleged herein, constitutes unfair competition under the common laws of the State of Texas.

108.    The Defendants have unfairly competed with Plaintiff by its advertisements featuring Infringing dresses with marks confusingly similar to the Plaintiff's Mark, thereby violating the common laws of the State of Texas. The Defendants' use was intended to mislead the public and lead to confusion and mistake and pass of services and goods as those of the Plaintiff. The Defendants' actions constitute common law trademark infringement under the laws of the State of Texas.

109.    Defendants' conduct is contrary to honest practice and violates Texas common law of unfair competition. Defendants are directly and through a corporation; (a) passing off their goods and services as those of the Plaintiff by virtue of a substantial similarity between the two;

Page **22** of **30**                *Plaintiff's Original Verified Complaint;*              *Case No. 4:23-cv-2914*
                                         *Application for Temporary Restraining*
                                         *Order and Request for Injunctive Relief*

(b) palming off their services and goods as those of VKM; and simulating the designs and goods of VKM in order to convince the public they may purchase Plaintiff's quality of dresses at a dramatically reduced price. Thus, creating confusion on the part of potential customers in violation of Texas common law of unfair competition.

110.    Defendant's acts of unfair competition entitle Plaintiff to recover damages and costs of this action, together with an accounting of profits made by Defendants on sales to the public of services under the Infringing Mark.

111.    Defendant's acts of unfair competition have been committed willfully and maliciously and were calculated to injure Plaintiff.

112.    The willful, wanton, and malicious nature of Defendants' acts, as alleged herein, entitles Plaintiff to an award of compensatory and exemplary damages against Defendant.

## FOURTH CLAIM FOR RELIEF:
### CONTRIBUTORY AND VICARIOUS COPYRIGHT INFRINGEMENT

113.    Plaintiff alleges and incorporates by reference the allegations set forth in paragraphs 1 through 112 as if fully stated herein for all purposes.

114.    Plaintiff is the owner of the copyright registrations for Plaintiff's Dresses.

115.    Defendants, without authority and willfully and maliciously, have acted in conscious and intentional disregard of and indifference to the rights of Plaintiff by, *inter alia*, including, encouraging, and/or contributing to third parties, including by ordering the manufacture, sale, reproduction, and display of unauthorized copies of Plaintiff's Dresses without the express or implied consent of Plaintiff.

116.    Upon information and belief, Defendants had the right and ability to supervise the copyright infringing activities of the individuals and entities that manufactured the Infringing

Page **23** of **30**           *Plaintiff's Original Verified Complaint;*           *Case No. 4:23-cv-2914*
*Application for Temporary Restraining*
*Order and Request for Injunctive Relief*

Dresses and also had and has a direct financial interest in such activities. As such, Defendants are vicariously liable for the infringing activities of their manufacturers.

117.    Upon information and belief, Defendants also had the right and ability to supervise the copyright infringing activities of the individuals and entities that photographed the Infringing Dresses which were displayed on social media sites, including by Jersson Luna Photography and Jaqui Photography, and also had and has a direct financial interest in such activities. As such, Defendants are vicariously liable for the infringing activities of their photographers.

118.    Defendants knew or reasonably should have known that Plaintiff's Dresses were protected copyrightable works owned and authored by Plaintiff. Specifically, Defendant Espinoza was a prior employee and agent of Plaintiff and received a license to distribute and offer Plaintiff's dress designs in the United States, prior to her termination in 2016. As such, Defendants were and are aware that the activities of their manufacturers and photographers are infringing Plaintiff's valuable copyrights.

119.    Defendants aiding of this third-party infringement has been willful, intentional, and purposeful, in disregard of and with indifference to Plaintiff's rights.

120.    Defendants' conduct constitutes a violation of 17 U.S.C. §§ 501, *et seq.*

121.    Defendants' aiding of the infringing activities of third parties continues through the date of filing this Complaint.

122.    As a direct and proximate result of Defendants' aiding of this third-party copyright infringement, Plaintiff has suffered, and continues to suffer, actual, immediate, and irreparable harm for which no adequate remedy exists at law. Unless immediately restrained and enjoined, Defendants will continue to engage in the acts complained of herein and, therefore, will continue to cause irreparable harm to Plaintiff.

Page **24** of **30**                     *Plaintiff's Original Verified Complaint;*                     *Case No. 4:23-cv-2914*
                                           *Application for Temporary Restraining*
                                           *Order and Request for Injunctive Relief*

123.    As a direct and proximate result of their wrongful conduct, Defendants have realized and will continue to realize profits and other benefits rightly belonging to Plaintiff. Accordingly, Plaintiff is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c). Alternatively, at Plaintiff's election, pursuant to 17 U.S.C. § 504(b), Plaintiff is entitled to its actual damages plus Defendants' profits from infringement, to be proven at trial.

124.    Plaintiff is entitled to its costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

### APPLICATION FOR *EX PARTE* RESTRAINING ORDER; TEMPORARY AND PERMANENT INJUNCTION

125.    Plaintiff alleges and incorporates by reference the allegations set forth in paragraphs 1 through 125 as if fully stated herein for all purposes.

126.    The relative equities of the parties are best served by permanently enjoining Defendants' actions in using, copying, possessing, and distributing Plaintiff's Dresses, and using Plaintiff's Mark to suggest that Defendant is selling authorized reproductions of Plaintiff's Dresses.

127.    Given Defendants' intentional and overt copying of Plaintiff's Dresses, and open and unauthorized use of Plaintiff's Mark, it is likely that, unless enjoined Defendants will retain the unauthorized reproductions to continue to promote their competing quinceañera dress company, causing consumer confusion regarding the source of Plaintiff's Dresses, and illegally diverting customers to Defendants. Plaintiff seeks the Court's protection to avoid further infringement of Plaintiff's valuable intellectual property and head-off further marketplace confusion.

128.    Based on the foregoing, Plaintiff has shown a probable right to recover. In addition, Plaintiff has no adequate remedy at law. Unless enjoined, Plaintiff will suffer, as it has already,

Page **25** of **30**        *Plaintiff's Original Verified Complaint;*        *Case No. 4:23-cv-2914*
*Application for Temporary Restraining*
*Order and Request for Injunctive Relief*

clear, immediate, and irreparable injuries from Defendants' acts, including, *inter alia*, lost customers, damage to the goodwill in and to Plaintiff's Mark, and loss of control over Plaintiff's valuable copyrights.

129.    The harm and loss will continue unless this Court restrains, and ultimately permanently enjoins, Defendants' conduct. Plaintiff is, therefore, entitled to temporary and permanent injunctive relief.

130.    As requested below, Plaintiff respectfully requests the Court enjoin Defendants from continuing to infringe upon Plaintiff's copyrights by:

e.   Enjoining Defendants, and any person or entity acting in concert with them, from manufacturing, reproducing, offering, selling, displaying, or advertising infringing copies of Plaintiff's Dresses;

f.   Enjoining Defendants from continuing to infringe upon Plaintiff's Mark by preventing further use of Plaintiff's Mark to offer, sell, or advertise Defendants' goods;

g.   Ordering that a copy of all social media posts on, including but not limited to those on Defendants' Instagram, Facebook, TikTok, YouTube, and Pinterest accounts be preserved and disclosed;

h.   Ordering that Defendants return the documentation in Defendants' possession that embodies the copyright protectable elements of the Leonora and Golden Train Dress designs;

i.   Ordering that all copies of the Infringing Dresses in Defendants' possession be returned to Plaintiff;

Page **26** of **30**          *Plaintiff's Original Verified Complaint;*          *Case No. 4:23-cv-2914*
*Application for Temporary Restraining*
*Order and Request for Injunctive Relief*

j.  Ordering that Defendants, and any person or entity acting in concert with them, remove from social media accounts under their possession, custody, and control, all unauthorized images of Plaintiff's Dresses; and

k.  Ordering Defendants to disclose the identity and location of any third parties with whom Defendants have improperly authorized to use, display, reproduce, or disseminate Plaintiff's Dresses, including, inter alia, dress manufacturers, photographers, catalogs, expositions, and conferences.

131.  A temporary restraining order should be granted *ex parte* because Plaintiff will suffer irreparable injury if Defendants are provided notice of this application before an order is granted. Specifically, Defendants are likely to relocate, copy, and further disseminate Plaintiff's copyrightable works upon learning of the relief Plaintiff's seek.

## ATTORNEYS FEES

132.  Plaintiff requests recovery of its reasonable attorneys' fees and costs under Sections 35(a) and (b) of the Lanham Act, 15 U.S.C. § 1117(a)-(b).

133.  Plaintiff requests recovery of its reasonable attorneys' fees and costs pursuant to 17 U.S.C § 505.

## DAMAGES

134.  Plaintiff seeks actual damages under Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a); statutory damages pursuant to 17 U.S.C. § 504(c), in the alternative, Plaintiff's actual damages, pursuant to 17 U.S.C. § 504(c).

135.  Plaintiff seeks recovery of Defendant's profits attributable to Defendants' infringing conducted alleged herein under; 17 U.S.C. § 504(b), 15 U.S.C. § 1117(a), and under the common law of the State of Texas.

136.   Plaintiff further seeks all other relief, together or in the alternative, to which it shows itself justly entitled at law or equity.

## EXEMPLARY DAMAGES

137.   Plaintiff seeks up to three times actual damages under Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a).

138.   As a result of Defendant's willful acts, violating unfair competition laws of Texas, Plaintiff is entitled to recover exemplary damages pursuant to TEX. CIV. PRAC. & REM. CODE § 41.001, *et seq*.

## CONDITIONS PRECEDENT

139.   All conditions precedent have been performed or have occurred.

## PRAYER AND RELIEF REQUESTED

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that the Defendants be cited to appear and answer, and that a final trial judgment be entered in favor of Plaintiff against Defendants as follows:

1.   An *ex parte* temporary restraining order and temporary injunction, thereafter to be entered as a permanent injunction upon final trial of this cause on the merits that:

   a.   Enjoins Defendants, their employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all those in active concert and participation with them from using, disclosing, copying, manufacturing, sharing, relocating, transferring, displaying, selling, renting, or distributing to any individuals or entities Plaintiff's Dresses or any embodiment of the copyright in and to Plaintiff's Dresses;

   b.   Enjoins Defendants, their employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all those in active concert and participation with them from using Plaintiff's Mark in connection with any commercial services offered by Defendants in a way that would create confusion in the minds of consumers as to the source, affiliation, marketing, or sponsorship of Defendants' goods and services with those of Plaintiff;

   c.   Orders Defendants to turn over all copies of the designs for the Infringing Dresses and all complete or in-process garments in Defendants' possession, custody, and control

Page **28** of **30**          *Plaintiff's Original Verified Complaint;*          *Case No. 4:23-cv-2914*
*Application for Temporary Restraining*
*Order and Request for Injunctive Relief*

that embody the copyright in Plaintiff's Dresses, to any United States Marshall or law enforcement officer until a hearing on the merits; and

d. Orders Defendants to preserve and serve upon Plaintiff's counsel a copy of each social media post on any account controlled by Defendants between January 1, 2021 and the date of such Order, including but not limited to Defendants' Instagram, Facebook, TikTok, YouTube, and Pinterest accounts,

e. Orders Defendants to identity the name, identity, and address of all third parties which whom Defendants have acted to use, display, reproduce, copy, or disseminate Plaintiff's Dresses, including but not limited to Defendants' dress manufacturers, photographers, cataloging companies, expositions, and conferences.

2. Judgment against Defendants for Plaintiff's actual damages and Defendant's profits under the Copyright Act (17 U.S.C. § 504(b)), or alternatively, for statutory damages under 17 U.S.C. § 504(c);

3. Recovery of Plaintiff's exemplary, compensatory, and special damages.

4. Recovery of pre- and post-judgment interest, attorneys' fees, and costs.

5. An accounting for damages.

6. An award and/or imposition of constructive trust on all funds unjustly received by Defendants as a result of the acts alleged herein.

7. Such other and further relief, including that requested herein, to which Plaintiff may show itself justly entitled.


Dated:  August 8, 2023                    Respectfully submitted,

                                          By: /s/ Justen S. Barks
                                              Justen S. Barks
                                              Bar No. 24087142
                                              **BEARD & BARKS PLLC**
                                              5005 Riverway Dr., Ste. 250
                                              P.O. Box 22171
                                              Houston, Texas 77227
                                              (832) 317-6761 (Tel.)
                                              edocs@beardandbarks.com


Page **29** of **30**          *Plaintiff's Original Verified Complaint;*          *Case No. 4:23-cv-2914*
*Application for Temporary Restraining*
*Order and Request for Injunctive Relief*

ATTORNEY          FOR          PLAINTIFF

VIANN'K MANSUR LLC

*Plaintiff's Original Verified Complaint;*                    *Case No. 4:23-cv-2914*
                                        *Application for Temporary Restraining*
                                        *Order and Request for Injunctive Relief*