## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| VIANN'K MANSUR LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION No. 4:23-cv-2914 |
| | § | |
| ESTILOISABELLA LLC, *et al.,* | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM, RECOMMENDATION, AND ORDER

Pending before the Court is Plaintiff Viann'K Mansur LLC's ("Plaintiff")

Motion for Sanctions (ECF No. 59), and Defendants EstiloIsabella LLC and

Jacqueline G. Espinoza's ("Defendants") Motion for Reconsideration and

Response to Plaintiff's Motion for Sanctions (ECF No. 62).[1]  Plaintiff filed a

response.  (ECF No. 65).  For the reasons stated below, the Court **DENIES**

Defendants' Motion for Reconsideration and **RECOMMENDS** that Plaintiff's

Motion for Sanctions be **GRANTED IN PART**.

---

[1] On August 15, 2025, Plaintiff's Motion for Sanctions (ECF No. 59) was referred to the Undersigned pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72. (ECF No. 60).  On August 29, 2025, Defendants' Motion for Reconsideration (ECF No. 62) was also referred to the Undersigned pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72.  (ECF No. 63).  Because Plaintiff is seeking a default judgment, a case dispositive sanction, the court submits the proposed recommendation under 28 U.S.C. § 636(b)(1)(B) for the District Judge's de novo review.

## I.     Background

On August 8, 2023, Plaintiff filed suit against Defendants alleging infringement of Plaintiff's intellectual property in connection with the design, manufacture, reproduction, promotion, and sale of quinceañera dresses. (ECF No. 1).  On February 5, 2024, United States District Judge Ewing Werlein, Jr. granted a Joint Motion for an Agreed Preliminary Injunction.  (ECF No. 22). The Agreed Preliminary Injunction ordered that Defendants preserve for inspection, to be conducted by a vendor selected by Plaintiff, computers, computer devices, mobile devices, and social media accounts owned or controlled by Defendants and used in the regular course of the operations of Defendants' business; that Defendants provide to Plaintiff an accounting of the dresses sold by Defendants which Plaintiff alleged infringed upon the subject dresses; and that Defendants identify the names, addresses, phone numbers, and email addresses of each individual or entity from whom Defendants allegedly purchased dresses which Plaintiff alleged to be a copy or an unauthorized derivative work of the subject dresses.  (*Id.* at 3).

In early 2025, Plaintiff claimed discovery misconduct because Defendants refused to produce evidence, falsely claimed evidence was destroyed, and fabricated documents. (ECF No. 44 at 1).  The evidence in dispute included contracts, invoices, a bookkeeping notebook, bank accounts, transactions, cell phones, laptops, and social media accounts.  (*See* ECF Nos.

44–45).  Plaintiff filed a Motion to Compel and for Sanctions (ECF No. 44) and a Motion for Show Cause (ECF No. 45).  On April 10, 2025, the Court held a hearing on both motions (ECF Nos. 44–45, 51).  The Court found Defendants committed multiple discovery violations, granted in part the motions, and imposed the following rulings in a Memorandum and Order dated April 17, 2025.  (ECF No. 53).

The Court ordered "Defendants produce for inspection, to a vendor selected by Plaintiff, all social media accounts owned and controlled by Defendants and used in the regular course" of Defendants' business operations. (ECF No. 53 at 6).  Production was to be made within 14 days of the Court's April 17 Order.  (*Id.*).  The Court ordered Defendants to produce, for inspection, all CashApp account information and records controlled by Defendants and used in the regular course of the operation of Defendants' business, to produce all bank account records and information used in the regular course of Defendants' business, and to produce all phone records used by Defendants in the regular course of Defendants' business from May 29, 2021 to February 5, 2024, the date of the Agreed Preliminary Injunction.  (ECF No. 53 at 7–9).  The CashApp account information and phone records were to be produced within 14 days of the Court's April 17 Order, and the bank account records and information were to be produced within 30 days of the Court's April 17 Order. (*Id.*).  The Court ordered Defendants to reimburse Plaintiff $3,500.00 for the

3

forensic examination of Defendants' Dell computer because Defendants initially produced the computer and represented it had been used in their business operations, but later confirmed it was not used for any business purpose relevant to the litigation. (*Id.* at 9). This reimbursement was to be made within 30 days of the April 17 Order, or by a time otherwise agreed to by the parties. (*Id.* at 10). To the extent Defendants had a computer that was used to conduct the relevant business, the Court ordered Defendants to produce a computer for inspection in accordance with the Agreed Preliminary Injunction. (*Id.*). Finally, the Court ordered Defendants "to produce any and all contracts or other bookkeeping information related to their allegedly infringing business that remain." (*Id.*). This production was to be made within 14 days of the April 17 Order. (*Id.*).

After the deadlines passed, Plaintiff filed a second Motion to Compel and for Sanctions on July 1. (ECF No. 56). Plaintiff contended Defendants were not acting in accordance with the Court's April 17 Order in that they failed to comply with a social media inspection, failed to produce CashApp records, banking records, phone records, and contract or bookkeeping materials, and failed to reimburse $3,500.00 for the forensic examination of Defendants' computer. (ECF No. 56 at 1). Defendants did not file a response.

Given Defendants' failure to respond to Plaintiff's Motion to Compel, and considering the affidavits attached to Plaintiff's Motion, the Court found

4

Defendants failed to comply in all respects and granted in part the Motion. (ECF No. 58 at 2–5). The Court therefore ordered Defendants to comply within 10 days of the Court's Order dated July 25, 2025. (*Id.* at 5). The Court explicitly warned that "[i]f Defendants fail to completely comply, the Court will impose additional sanctions under Rule 37, potentially including recommending an adverse inference instruction or judgment by default for failure to properly conduct discovery and failure to comply with this Court's Memorandum and Order (ECF No. 53). . . . This is Defendants' final chance to comply." (*Id.* at 5–6).

On August 8, Plaintiff sent Defendants a letter regarding Defendants' noncompliance with discovery obligations. (ECF No. 59-1). On August 14, Plaintiff filed the instant Motion for Sanctions, contending Defendants are not acting in accordance with this Court's July 25, 2025 Order (ECF No. 58) in that "Defendants have produced no additional documents and remain in violation across multiple compelled categories." (ECF No. 59 at 2). Specifically, Defendants (1) failed to produce social media accounts for inspection; (2) failed to produce CashApp records and non-U.S. bank records; (3) failed to produce complete phone records and identify business devices; (4) failed to pay the $3,500 reimbursement; (5) failed to produce a business computer or confirm its nonexistence; and (6) failed to produce contracts or bookkeeping records, or substantiate the claimed loss of such records due to flooding. (*Id.* at 3). For

relief, Plaintiff requests that the Court enter default judgment against Defendants under Federal Rule of Civil Procedure 37(b)(2)(A)(vi), or in the alternative, that  the Court issue an adverse inference instruction and award monetary sanctions, including "(a) $3,500 reimbursement for the forensic examination (as previously ordered), and (b) Plaintiff's reasonable attorney's fees for [their] motion and all prior motions to compel." (*Id.* at 5).

On August 28, Defendants filed their Motion for Reconsideration of the Court's July 25 Order and in Response to Plaintiff's Motion for Sanctions, averring that Defendants have substantially complied with the Court's Orders; that Plaintiff has not been prejudiced to the extent claimed; and that severe sanctions—e.g., in the form default judgment—are unwarranted. (ECF No. 62 at 2, 6).  Plaintiff filed a response on September 18.[2] (ECF No. 65).

## II.    Discussion

### A.    Motion for Reconsideration

Defendants move for reconsideration pursuant to Federal Rule of Civil Procedure ("Rule") 60(b).  The Federal Rules of Civil Procedure do not recognize a general motion for reconsideration. *St. Paul Mercury Ins. Co. v. Fair*

---

[2] Plaintiff notes that, "because Defendant never submitted social media, withheld core records, and ignored deadlines[,]" Plaintiff was held back from conducting "a damages estimate to support settlement and/or a comprehensive motion for summary judgment" by the August 21, 2025 deadline for both dispositive and non-dispositive motions.  "As a result, Plaintiff was forced to file a liability-only motion for summary judgment." (ECF No. 65 at 10).  That motion is currently pending before the District Judge.  (ECF No. 61).

*Grounds Corp.*, 123 F.3d 336, 339 (5th Cir. 1997).  Rather, courts treat such motions as motions pursuant to either Rule 54(b), 59(e), or 60 depending on when the motion is brought and the type of order that the party requests the Court to reconsider.  *Pulse Supply Chain Sols., Inc. v. Tagliamonte*, No. 3:21-cv-2706, 2023 WL 5658929 at *1 (N.D. Tex. Aug. 31, 2023); *Mehar Holdings, LLC v. Evanston Ins. Co.*, No. 5:16-cv-491, 2016 WL 5957681, at *2 (W.D. Tex. Oct. 14, 2016).  When a motion seeks reconsideration of an interlocutory order, such as a sanctions order, the motion should be considered under Rule 54(b).  *Roor Int'l BV v. Stinky's Smoke Shop, LLC*, No. 4:18-cv-735, 2024 WL 1913133, at *3 (E.D. Tex. May 1, 2024) (citing *Cabral v. Brennan*, 853 F.3d 763, 766 (5th Cir. 2017)).  "Rule 54(b) allows parties to seek reconsideration of interlocutory orders and authorizes the district court to 'revise[ ] at any time' 'any order or other decision . . . [that] does not end the action[.]'"  *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (quoting FED. R. CIV. P. 54(b).

"Under Rule 54(b), 'the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.'"  *Id.*  "'The district court's discretion in this respect is broad.' . . . Nevertheless, Rule 54(b) motions for reconsideration 'have a narrow purpose' and 'are not the proper vehicle for rehashing old arguments or advancing theories of the case that could have been presented earlier.'"  *Pulse Supply Chain Sols., Inc.*, 2023 WL

5658929 at *1–2, n.2 (internal citations omitted) (considering motion for reconsideration of court's sanction order under Rule 54(b) because the order did not "end the action"); *see also McClendon v. United States*, 892 F.3d 775, 781 (5th Cir. 2018) ("[W]hen a district court applies the more stringent Rule 59(e) standard in denying a motion to reconsider an interlocutory order, we must vacate and remand 'for the district court to reconsider [the] motion for reconsideration under the more flexible Rule 54(b).' In this case, the district court's summary judgment against [plaintiff] was interlocutory because it did not end the action. . . . Rule 54(b), therefore, provided the correct standard for deciding [plaintiff's] motion for reconsideration."). Thus, because the Court's July 25 sanctions Order did not end the action, the Court finds Defendants' Motion for Reconsideration should be considered under Rule 54(b).

However, Defendants make no legal arguments as to why the Court's July 25 Order should be reconsidered. Instead, Defendants rehash explanations as to why they have yet to comply with the Court's prior Orders. (*See* ECF No. 62 at 6 ("Any delays in production have not been willful or strategic, but due to genuine logistical challenges.")). Setting aside these explanations, which will be addressed more thoroughly below, the fact remains that Defendants did not comply with the Court's prior Orders. For instance, in its July 25 Order, after considering the affidavits attached to Plaintiff's prior Motion for Sanctions (ECF No. 56) and Defendants' failure to respond, the

Court found Defendants failed to produce relevant social media accounts (ECF No. 58 at 2). Defendants' own response to Plaintiff's correspondence reflected a complete disregard of this Court's April 17 Order. (*Id.*). Defendants attempted to blame any delay on the vendor and Plaintiff's failure to submit search terms; however, Defendants' lack of a response and Plaintiff's affidavits defeated such allegations, and the Court's April 17 Order did not condition such production upon the exchange of a search term list. (*Id.*). Similarly, the Court found Defendants did not produce relevant CashApp account(s), bank accounts, phone records, and contract or bookkeeping materials. (*Id.* at 2–4). Nor did Defendants provide evidence of the alleged flooding that destroyed their business contracts and bookkeeping records. (*Id.* at 5).

Defendants cannot now relitigate the factual findings in the Court's July 25 Order. Considering that Defendants failed to respond to Plaintiff's prior Motion for Sanctions (ECF No. 56), Defendants' current explanations are untimely and insufficient to warrant reconsideration. Motions for reconsideration "are not the proper vehicle for rehashing old arguments or advancing theories of the case that could have been presented earlier." *Pulse Supply Chain Sols., Inc.*, 2023 WL 5658929, at *2 ("After presenting no evidence at the [sanctions] hearing, [plaintiff] now attaches three appendices of evidence to its Motion to refute Defendants' evidence. However, this influx of evidence is too little, too late."). Because Defendants have shown no basis

for reconsideration, the Court denies the Motion for Reconsideration.  (ECF No. 62).

### B.    Motion for Sanctions

Plaintiff seeks a default judgment under Rule 37(b)(2)(A)(vi), or in the alternative, that the Court issue an adverse inference instruction and award monetary sanctions.  Rule 37(b)(2)(A) states:

> If a party or a party's officer, director, or managing agent . . . fails to obey an order to provide or permit discovery[,] . . . the court where the action is pending may issue further just orders [that] may include the following:
> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence . . .
> (v) dismissing the action or proceeding in whole or in part;
> (vi) rendering a default judgment against the disobedient party; or
> (vii) treating as contempt of court the failure to obey [an] order[.]

FED. R. CIV. P. 37(b)(2)(A)(i)–(vii).  Rule 37(b)(2)(A) "allows a district court to impose a sanction when a party fails to comply with a discovery order, and the court has broad discretion in fashioning its sanction when it does so." *Law Funder, L.L.C. v. Munoz*, 924 F.3d 753, 758 (5th Cir. 2019).  The Rule provides a range of possible sanctions, but litigation-ending sanctions are only warranted when the discovery violation is willful or in bad faith, the client is the responsible actor, the violation substantially prejudiced the opposing

party, and a lesser sanction would not achieve the desired deterrent effect. *Id.* at 758–59. The Fifth Circuit has explained that:

> dismissal is authorized only when the failure to comply with the court's order results from willfulness or bad faith . . . . [and] where the deterrent value of Rule 37 cannot be substantially achieved by the use of less drastic sanctions. . . . In making its "bad faith" determination, the district court [is] entitled to rely on its complete understanding of the parties' motivations.

*Smith v. Smith*, 145 F.3d 335, 344 (5th Cir. 1998) (internal citation omitted).

Sanctions may also include an award of attorney's fees. Under Rule 37(b)(2)(C), "the disobedient party, the attorney advising that party, or both[,]" may be ordered to pay the "the reasonable expenses, including attorney's fees," caused by the failure to comply with the discovery order. "[T]he assessment of attorney's fees is penal in nature; it is designed to penalize those who engage in the charged conduct and to deter others who might be tempted to follow in similar conduct." *Batson v. Neal Spelce Assocs., Inc.*, 765 F.2d 511, 516 (5th Cir. 1985). Rule 37 "provides that only those expenses, including fees, caused by the failure to comply may be assessed against the noncomplying party," and that those expenses must be reasonable. *Id.*

On the other hand, the loss of electronically stored information ("ESI") is governed by Rule 37(e), which provides:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:

11

> (1) upon finding *prejudice to another party from loss of the information*, may order measures no greater than necessary to cure the prejudice; or
> (2) only upon finding that *the party acted with the intent to deprive another party of the information's use in the litigation* may:
>> (A) presume that the lost information was unfavorable to the party;
>> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>> (C) dismiss the action or enter a default judgment.

FED. R. CIV. P. 37(e) (emphasis added). To apply Rule 37(e) sanctions, the Court must determine whether the following four predicate elements exist: "(1) there is ESI that should have been preserved; (2) that ESI has been lost; (3) the ESI was lost because of a party's failure to take reasonable steps to preserve it; and (4) the ESI cannot be restored or replaced." *Cleary v. Am. Airlines, Inc.*, No. 4:21-cv-184, 2022 WL 5320126, at *7 (N.D. Tex. July 22, 2022). If these four predicate elements are met, the Court then addresses possible remedies under Rule 37(e)(1) or 37(e)(2), "which have different requirements before sanctions can be imposed and can lead to different sanctions." *United Healthcare Servs., Inc. v. Rossel*, No. 3:21-cv-1547, 2024 WL 1252365, at *4 (N.D. Tex. Mar. 21, 2024) (citation omitted). Rule 37(e)(2) allows courts "to impose certain severe sanctions for the intentional failure of a party to preserve relevant ESI, but only after a finding that the party 'acted with the intent to deprive another party of the information's use in the litigation,'"; and "if the court does not find that the spoliating party acted with

an intent to deprive[ ] but determines that the loss of ESI prejudiced another party," Rule 37(e)(1) allows courts to "impose lesser sanctions in the form of 'measures no greater than necessary to cure the prejudice.'" *Id.* (citing *Castro v. Wal-Mart Real Est. Bus. Tr.*, 645 F. Supp. 3d 638, 646 (W.D. Tex. 2022)) (citation modified).  Under Rule 37(e), "[a] party suffers prejudice where it cannot present 'evidence essential to its underlying claim.'" *Coastal Bridge Co., L.L.C. v. Heatec, Inc.*, 833 F. App'x 565, 575 (5th Cir. 2020); *see also Jim S. Adler, P.C. v. McNeil Consultants, LLC*, No. 3:19-cv-2025, 2023 WL 2699511, at *9 (N.D. Tex. Feb. 15, 2023) ("Prejudice under Rule 37(e) means that a party's ability to obtain the evidence necessary for its case has been thwarted.").

Under Rule 37(e)(1), after finding prejudice to another party from loss of ESI, "[a] common curative measure courts impose is instructing the jury that it can consider the circumstances surrounding the loss of the ESI." *Adler*, 2023 WL 2699511, at *10; *United Healthcare Servs., Inc.*, 2024 WL 1252365, at *4. However, under subsection (e)(2), before a court can impose the sanction of an adverse presumption, an adverse instruction to the jury, or default judgment, it must find that the party that caused the loss "acted with the intent to deprive another party of the information's use in the litigation." *United Healthcare Servs., Inc.*, 2024 WL 1252365, at *5 ("'[A] finding of negligence or gross negligence' will not suffice to justify 'the giving of an adverse-inference

instruction.'") (internal citations omitted).  "Courts also routinely award attorney's fees and expenses under Rule 37(e), to cover the time and effort necessary to bring the issue of spoliation before the court."  *Adler*, 2023 WL 2699511, at *10.

### 1. Social Media Accounts

Plaintiff contends Defendants have not produced all social media accounts "owned and controlled" and "used in the regular course" of business for inspection by Plaintiff's forensic vendor.  (ECF No. 59-2).  Additionally, Plaintiff's vendor, "Eric Devlin of Lone Star Forensic Group, informed Plaintiff's counsel that he would no longer work in this case after Defendant [Jacqueline] Espinoza called him a 'liar' during a phone conversation."  (ECF No. 59 at 3; ECF No. 59-1).

In response, Defendants recite several miscommunications between Devlin and Defendant Espinoza ("Espinoza") over social media account access. (ECF No. 62 at 2–3).  For instance, Defendants claim Espinoza "provided credentials and/or access information for the business social media accounts to Plaintiff's vendor"; however, after Espinoza contacted Devlin "[o]n or about May 5, 2025," Defendants state Espinoza "did not turn over her passwords," "[p]ossibly due to a misunderstanding resulting from a language barrier."  (*Id.* at 2).  Then, around May 19, "Counsel for Defendants urged Ms. Espinoza to attempt to call again," and "Espinoza once again expressed concern that

Plaintiff had not yet proposed a list of search terms;" but there is no indication a call to Devlin was in fact made. (*Id.* at 3). Around July 23, Espinoza "eventually reached out to Mr. Devlin again, despite not having received a list of proposed search terms," but again, there is no indication Defendants produced social media accounts for inspection. (*Id.*). And, as the Court previously stated, "the Court's [April 17] Order did not condition such production upon the exchange of a search term list." (*See* ECF No. 58 at 2). Although Espinoza has expressed she is "willing to turn over her social media account" (ECF No. 62 at 3), she has failed to do so.

Because Defendants have not produced all social media accounts for inspection, Defendants have violated this Court's prior Orders (ECF Nos. 53, 58). Courts have the authority to issue sanctions for discovery abuses under Rule 26 and Rule 37, as well as the court's inherent power. *Pruco Life Ins. Co. v. Villarreal*, No. 17-cv-2795, 2022 WL 14915624, at *2 (S.D. Tex. Oct. 25, 2022). Though Defendants have failed to comply with a court order under Rule 37(b)(2), the conduct identified at this point does not warrant default judgment. *See Law Funder, L.L.C.*, 924 F.3d at 758–59 (listing additional findings for litigation-ending sanction).[3] However, "[f]or a lesser sanction,"

---

[3] At this stage, it has also not been established yet that social media ESI has been lost or that Defendants "acted with the intent to deprive" Plaintiff of the information's use in this litigation to warrant sanctions under Rule 37(e). *See Cleary*, 2022 WL 5320126, at *7 (describing elements for Rule 37(e) sanctions); *see also Collier v. Cash*, No. 4:23-cv-880, 2025

such as an adverse inference sanction, the district court can determine sanctions that are "just" and "related to the particular 'claim' which was at issue in the order[.]" *Id.* at 758; *see also Felman Prod., Inc. v. Indus. Risk Insurers*, No. 3:09-cv-481, 2011 WL 4547012 (S.D.W. Va. Sept. 29, 2011) (concluding adverse inference instruction stating that plaintiff's unproduced documents supported defendant's fraud counterclaim was an adequate remedy under Rule 37(b) instead of requested default judgment); *Update Art, Inc. v. Modiin Pub., Ltd.*, 843 F.2d 67, 71–72 (2d Cir. 1988) (holding imposition of preclusive sanctions against defendants was supported by evidence that defendants repeatedly failed to comply with discovery orders and noting Rule 37(b) provides that the court may make such orders in regard to failure to comply as are "just").

Courts must apply Rule 37 sanctions "diligently both to 'penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent.'. . . The sanction imposed should be tailored to the particular misconduct." *Pruco Life Ins.*, 2022 WL 14915624, at *2; *see e.g.*, *Certain Underwriters at Lloyds London v. Corp. Pines Realty Corp.*, 355 F. App'x 778, 780 (5th Cir. 2009)

---

WL 2612732, at *3 (S.D. Tex. May 9, 2025) (concluding defendants' conduct was "careless and reckless" but did not "rise to the level of bad faith" where the failure to preserve social media posts was negligent but the evidence did not demonstrate defendants "intended" to deprive plaintiff of damaging evidence).

(concluding district court did not abuse its discretion in granting Rule 37(b)(2) sanctions excluding evidence of defendant's claimed rental income loss from a tenant where defense counsel instructed tenant to attend a deposition without court-ordered lease documents); *Hammond v. Coastal Rental & Equip. Co.*, 95 F.R.D. 74, 76–78 (S.D. Tex. 1982) (granting Rule 37(b)(2) sanctions to have audit prepared by plaintiffs taken as "true and correct" and defendants "precluded" from claiming that audit was inaccurate where defendant failed to provide records that were purportedly destroyed in fire but were available during discovery period and at time of previous sanction orders); *Conway v. Dunbar*, 121 F.R.D. 211, 214 (S.D.N.Y. 1988) (holding that police officers' willful failure to comply with discovery orders warranted imposition of Rule 37(b)(2) sanction striking police officers' affirmative defenses and precluding them "from offering any evidence at trial on issue of liability") (citing *Hammond v. Coastal Rental & Equip. Co.*, 95 F.R.D. 74)); *Banco de Ponce v. Buxbaum*, No. 90-cv-6334, 1991 WL 258768, at *2, *6–7 (S.D.N.Y. Nov. 27, 1991) (upholding Rule 37(b)(2) sanctions which prohibited defendant from introducing evidence in support of her claim because she failed to produce documents identified during her deposition).

When parties engage "in bad faith conduct, a court should ordinarily rely on the Federal Rules as the basis for sanctions. . . . [b]ut when a court can 'find no sanction under the Federal Rules directly applicable to' the misconduct at

issue, the court may impose sanctions under its inherent power." *Pruco Life Ins.*, 2022 WL 14915624, at *3–4; *see, e.g.*, *Beck v. Test Masters Educ. Servs., Inc.*, 289 F.R.D. 374, 380–82  (D.D.C. 2013) (concluding that under Rule 37(b) and court's inherent authority, adverse inference instruction was proper to instruct the factfinder that it could infer from defendant's failure to produce certain emails that the emails would have contained evidence unfavorable to defendant); *CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 501 (S.D.N.Y. 2016) ("If the plaintiffs were correct that Rule 37(e) is inapplicable here, relief would nonetheless be warranted under the Court's inherent power. . . . dismissal of the action or imposition of an adverse inference are available sanctions under either Rule 37(e) or the court's inherent authority).  A court's ability to punish misconduct "is necessary to the integrity of the courts, for 'tampering with the administration of justice involves far more than an injury to a single litigant.'" *Pruco Life Ins.*, 2022 WL 14915624, at *4.

In light of Defendants' willful noncompliance to abide by this Court's prior Orders, an adverse inference sanction as to the intentionally withheld discovery is warranted and would be "the least severe sanction adequate to achieve the desired result." *Id.* at *4.  As courts have found, the imposition of an adverse inference is an appropriate sanction for discovery misconduct under either Rule 37(b) or the court's inherent authority.  *See Sines v. Kessler*, 339 F.R.D. 96, 100, 109–11 (W.D. Va. 2021), *order approved*, No. 3:17-cv-72, 2021

WL 5492826 (W.D. Va. Nov. 19, 2021) (collecting cases and concluding permissive adverse inference was an appropriate sanction under Rule 37(b)(2) where defendants intentionally withheld requested discovery materials, including ESI, and agent produced incomplete credentials and unusable passwords for e-mail accounts, deleted accounts before vendor could image them, and blamed vendor for its inability to access accounts that agent personally controlled); *Ramgoolie v. Ramgoolie*, No. 16-cv-3345, 2018 WL 4266015, at *8–10 (S.D.N.Y. Sept. 6, 2018) (adopting magistrate judge's permissive adverse inference recommendation under Rule 37(b) based on defendant failing to comply with five of plaintiff's document requests after multiple orders to do so, and deferring decision on the exact language of instruction until trial); *Linde v. Arab Bank, PLC*, 269 F.R.D. 186, 195–202 (E.D.N.Y. 2010) (concluding plaintiffs were entitled to adverse inference sanctions based on defendant bank's withholding of evidence during discovery); *Xiao Hong Zheng v. Perfect Team Corp.*, 739 F. App'x 658, 661 (2d Cir. 2018) ("Nor did the adverse inference sanction . . . constitute an abuse of discretion. Rule 37(b)(2)(A)(i) expressly permits adverse inference sanctions, and we have noted that imposing an adverse inference sanction is well within a district court's discretion.")

Defendants' noncompliance with this Court's prior discovery Orders also warrants "pay[ing] the reasonable expenses, including attorney's fees, caused

19

by [their] failure." FED. R. CIV. P. 37(b)(2)(C); *cf. United Healthcare Servs., Inc.*, 2024 WL 1252365, at *15 (declining to impose sanctions under Rule 37(b) because there was no violation of discovery order); *Barker v. Louisiana Sch. for Math, Sci. & the Arts*, No. 1:21-cv-4419, 2024 WL 1667726, at *5 (W.D. La. Mar. 8, 2024), *report and recommendation adopted*, No. 1:21-cv-4419, 2024 WL 1664735 (W.D. La. Apr. 17, 2024) (finding Rule 37(b)(2) was not applicable because there was no violation of a discovery order). As recommended below, Defendants are also reminded that the Court's April 17 Order did not condition the production of social media upon the exchange of a search term list. (*See* ECF No. 58 at 2).

### 2. CashApp Records and Non-U.S. Bank Records

Plaintiff contends Defendants have failed to produce CashApp records and non-U.S. bank records. (ECF No. 59 at 3). In response, Defendants assert, "the CashApp account belonged to a former employee of EstiloIsabella, LLC, named Iliana Osorio. The CashApp account was connected to Ms. Osorio's phone number, and the account was on Ms. Osorio's personal phone. Defendants do not have access to Ms. Osorio's accounts." (ECF No. 62 at 4).

Rule 34(a) provides for the discovery of documents and tangible things:

(a) In General. A party may serve on any other party a request within the scope of Rule 26(b):
(1) to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control:

(A) any designated documents or electronically stored information . . . stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form; or
(B) any designated tangible things . . . .

"Once a party moving to compel discovery establishes that the materials and information it seeks are relevant or will lead to the discovery of admissible evidence, the burden rests upon the party resisting discovery to substantiate its objections." *Vasquez v. Conquest Completion Services*, LLC, No. 15-cv-188, 2018 WL 3611891, at *2 (W.D. Tex. Jan. 10, 2018).  Plaintiff has produced evidence Espinoza used CashApp to accept payment to conduct the alleged infringing business (ECF No. 44 at 16; ECF No. 44-7 at 6; ECF No. 44-14), and Defendants concede the CashApp account belonged to a former employee of EstiloIsabella, LLC (ECF No. 62 at 4).  The Court therefore finds that the CashApp records are responsive and relevant.

Because the records are relevant and discoverable, Defendants cannot block production of the CashApp records simply by refusing to request the records themselves.  *See Hunters Run Gun Civ. Action No. Club, LLC v. Baker,* No. 17-cv-176, 2019 WL 507479, at *4–8 (M.D. La. Feb. 7, 2019) (agreeing with cases that held the Federal Rules empower courts to order parties to execute releases that direct non-parties to produce relevant information, and finding it appropriate to order defendant to either: (1) provide plaintiffs with executed release forms/authorizations required by defendant's phone providers to

21

release cell records, or (2) obtain and produce the cell records themselves); *see also Vasquez*, 2018 WL 3611891, at *3 ("Defendant may choose to either sign the authorization enabling Plaintiff to obtain the cell-phone records from the non-party custodian or Defendant may obtain the records himself from the non-party custodian and produce the records.").  The Court thus finds Defendants have failed to comply.

Regarding non-U.S. bank records, Defendants assert, "some accounts flagged by Plaintiff as belonging to [Espinoza] did not belong to [Espinoza] but instead belonged to her deceased father.  Nevertheless, Defendants will make an effort to supplement with any additional statements from the Defendants' existing accounts in Mexico."  (ECF No. 62 at 4).  Given Defendants' concession of the non-U.S. bank records and their failure to produce them in accordance with the Court's July 25 Order, the Court finds Defendants have failed to comply.[4]

---

[4] In Plaintiff's Response to Defendants' Motion for Reconsideration (ECF No. 62), Plaintiff asserts Defendants' production of bank records is incomplete, as "Defendant's Wells Fargo records reflect transfers to a Capital One business account, to Wells Fargo business savings accounts, and to Mr. Ramirez's personal checking account, all of which are independent of any payroll.  These transfers demonstrate the existence of other accounts for which no records have been produced."  (ECF No. 65 at 7–8).  Plaintiff has also attached a copy of Defendant's Wells Fargo Bank Statement evidencing a sample of the transfers.  (ECF No. 65-1).  The Court reminds Defendants of their discovery obligation "to produce **all bank records and information** used in the regular course of Defendants' business from May 29, 2021 to February 5, 2024."

Due to Defendants' noncompliance, an adverse inference sanction as to the non-produced CashApp and bank records is warranted. *See Sines v. Kessler*, 339 F.R.D. 96, 1109–11 (W.D. Va. 2021); *Ramgoolie v. Ramgoolie*, No. 16-cv-3345, 2018 WL 4266015, at *8–10 (S.D.N.Y. Sept. 6, 2018); *Linde v. Arab Bank, PLC*, 269 F.R.D. 186, 195–202 (E.D.N.Y. 2010); *see also supra* Part II.B.1.[5]  Defendants' failure to produce the records in accordance with this Court's prior discovery Orders also warrants Defendants "pay[ing] the reasonable expenses, including attorney's fees, caused by [their] failure." FED. R. CIV. P. 37(b)(2)(C).

### 3. Phone Records and Business Devices

Plaintiff contends Defendants "have not produced complete phone records for the period May 29, 2021 through February 5, 2024, nor provided basic identifying information for the devices used in the business." (ECF No. 59-2).  In response, Defendants assert that Espinoza uses pre-paid phones and met with an AT&T employee, who "allowed Ms. Espinoza to see his tablet screen which listed the devices, but could not print the record or take a screenshot."  (ECF No. 62 at 4).  Instead, Espinoza took a photo of the

---

[5] Though Defendants have failed to comply under Rule 37(b)(2), the conduct identified at this point does not rise to the level of willfulness or bad faith as to warrant default judgment, particularly when Defendants concede the existence of the records and remain willing to produce additional statements from Defendants' existing bank accounts in Mexico. Plaintiff also has neither established that ESI has been lost nor that Defendants "acted with the intent to deprive" Plaintiff of the information's use in this litigation to warrant sanctions under Rule 37(e). *See supra* Part II.B.1. at n.3.

employee's tablet screen and turned the photo over to Plaintiff. (*Id.*). However, Defendants also note that Espinoza called the "AT&T Legal Department, and was informed that they could not provide any additional information without a warrant *or subpoena.*" (*Id.*) (emphasis added). As explained above, Defendants may obtain the records from the non-party custodian and produce the phone records. *See Vasquez*, 2018 WL 3611891, at *3.

Given Defendants' failure to produce the phone records or provide identifying information for the devices used in Defendants' business in accordance with the Court's July 25 Order, the Court finds Defendants have failed to comply.

Due to Defendants' noncompliance, an adverse inference sanction as to the nonproduced phone records is warranted. *See Sines v. Kessler*, 339 F.R.D. 96, 1109–11 (W.D. Va. 2021); *Ramgoolie v. Ramgoolie*, No. 16-cv-3345, 2018 WL 4266015, at *8–10 (S.D.N.Y. Sept. 6, 2018); *Linde v. Arab Bank, PLC*, 269 F.R.D. 186, 195–202 (E.D.N.Y. 2010); *see also supra* Part II.B.1.[6] Defendants' failure to produce the records in accordance with this Court's prior discovery

---

[6] Though Defendants have failed to comply under Rule 37(b)(2), the conduct identified at this point does not rise to the level of willfulness or bad faith as to warrant default judgment, particularly when Espinoza has taken steps to inquire about the phone records from her carrier. Plaintiff also has neither established that ESI has been lost nor that Defendants "acted with the intent to deprive" Plaintiff of the information's use in this litigation to warrant sanctions under Rule 37(e). *See* supra Part II.B.1. at n.3.

24

Orders also warrants Defendants "pay[ing] the reasonable expenses, including attorney's fees, caused by [their] failure."  FED. R. CIV. P. 37(b)(2)(C).

### 4. $3,500 Reimbursement

Plaintiff contends "Defendants have not reimbursed Plaintiff the $3,500.00 ordered for the Dell computer forensic analysis, nor provided any agreement for alternative payment timing."  (ECF No. 59-2).  In response, Defendants concede non-payment: "[Espinoza] does not currently have the funds to pay the $3,500 reimbursement, but is willing to address a payment plan. . . . Ms. Espinoza will honor the ruling made by the court on that matter, and will work with Plaintiff to establish a payment plan if possible."  (ECF No. 62 at 5).  Defendants, however, have not provided evidence of an agreed-upon payment plan.  (*See* ECF No. 65 at 9 ("Defendants admit they have not paid and, critically, never proposed a payment plan or even communicated with Plaintiff about the payment until the filing of thier [sic] Motion.")).  Given Defendants' failure to reimburse Plaintiff $3,500—or provide evidence of an agreement to reimburse at another time—in accordance with the Court's July 25 Order, the Court finds Defendants have failed to comply.  Defendants will be ordered to "pay the reasonable expenses, including attorney's fees, caused by [their] failure."  FED. R. CIV. P. 37(b)(2)(C).  Accordingly, the Court will impose additional monetary sanctions on Defendants to compensate Plaintiff

for the time and expense incurred in filing the present motion to enforce compliance.

### 5.  Business Computer

Plaintiff contends Defendants failed to produce a business computer or confirm its nonexistence.  (ECF No. 59-2).  In response, Defendants assert that "Espinoza has consistently maintained that she does not use a computer for business purposes.  She only uses a computer for printing vinyl monograms for accessories.  She does not keep copies of completed contracts or invoices on the computer."  (ECF No. 62 at 5).  Defendants have attached Espinoza's affidavit attesting to these facts.  (*See* ECF No. 62-1 ("I do not use the Computer, or any computer, for EstiloIsabella business . . .")).  As such, the Court finds Defendants have complied in providing written confirmation that no business computer exists.

### 6.  Contracts or Bookkeeping Records

Plaintiff contends Defendants failed to produce contracts or bookkeeping records or to substantiate the claimed loss of such records due to flooding.  (ECF No. 59-2).  According to Plaintiff, "[t]he withheld materials are central to Plaintiff's claims.  Without the compelled sales records, financial data, and business communications, Plaintiff cannot quantify damages, prove willfulness, or rebut Defendants' representations. The prejudice [was]

compounded by the impending August 21, 2025, dispositive motion deadline."

(ECF No. 59 at 5; *see also supra* n.2).  Defendants assert,

> Defendants were subjected to multiple flooding events at both the EstiloIsabella location on Mount Vernon Street, as well as in Ms. Espinoza's home.  Two separate flooding incidents occurred at the Mount Vernon location, where most records were kept in the lowest level, which were caused by HVAC malfunctions.  A copy of a letter from Defendant's landlord will be provided to Counsel for Plaintiff immediately.  Additionally, Defendant's home flooded due to damage caused by Hurricane Beryl in July of 2024.  Videos of the flood damage will be sent to Counsel for Plaintiff immediately. 20.  Defendants have turned over all contracts and documents that are still in their possession, and turned over many relevant documents prior to the flooding events as part of Defendants' timely good faith responses to Plaintiff's first set of discovery, which occurred prior to the flood.  There are no additional contracts in Defendants' possession that have not been turned over.

(ECF No. 62 at 5–6).  Defendants have not attached evidence of flooding, a copy

of a letter from Defendant's landlord at the Mount Vernon location, or

videos/evidence of the flood damage to Defendant's home.  Plaintiffs respond

that, "[a]ccording to Defendant, 'the floods' occurred on July 8, 2024 (Hurricane

Beryl) and November 19, 2024 (AC Leak in the rented office) and were not

disclosed until December 9, 2024—on the day Plaintiff's counsel arrived at

Defendants' office to inspect the accounts and the eve of the 30(b)(6)

deposition."  (ECF No. 65 at 9).  To the extent Defendants failed to produce

evidence of the alleged flooding that destroyed their business contracts and

bookkeeping records, the Court finds Defendants have failed to comply with

the Court's July 25 Order.

Assuming the loss of records was caused by unexpected flooding, it cannot be said that the loss was "willful" or in "bad faith," or that "the client is the responsible actor," such that "litigation-ending sanctions" under Rule 37(b) are warranted. *See Law Funder, LLC*, 924 F.3d at 758–59; *cf. Certain Underwriters*, 355 F. App'x at 780.

As to Rule 37(e) sanctions, the Court finds that the four predicate elements exist: (1) there is ESI that should have been preserved based on the Agreed Preliminary Injunction, which was issued on February 5, 2024 before the floods;[7] (2) that ESI has been lost due to the alleged floods; (3) the ESI was lost because of Defendants' failure to take reasonable steps to preserve it; and (4) the ESI cannot be restored or replaced.[8]   *See Cleary*, 2022 WL 5320126, at

---

[7] *See Pasha v. Dick's Sporting Goods Inc.*, No. 4:22-cv-3211, 2024 WL 620282, at *2 (S.D. Tex. Feb. 14, 2024) ("A party's duty to preserve evidence comes into being when the party has notice that the evidence is relevant to the litigation or should have known that the evidence may be relevant." (citing *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015)).

[8] Although the record does not make it entirely clear whether Defendants' contracts and bookkeeping materials existed solely in electronic form, the Court presumes that they constitute electronically stored information ("ESI") for purposes of Rule 37(e).  The February 5, 2024 Agreed Preliminary Injunction required Defendants to preserve electronic devices "used in the regular course" of their business and to provide an accounting of dress sales and related supplier information.  (ECF No. 22).  Defendants subsequently produced at least some contract and invoice materials, reflecting that such records existed in an electronic format or were capable of being electronically generated or stored.  *See Cleary*, 2022 WL 5320126, at *7.  Moreover, other evidence in the record—such as Defendants' use of CashApp transactions and business social media accounts—further supports the inference that relevant accounting and transactional information was maintained or accessible electronically.  Accordingly, the Court treats the lost contract and bookkeeping records as ESI within the meaning of Rule 37(e).  *See* FED. R. CIV. P. 37(e) advisory committee's note to 2015 amendment ("It is important that counsel become familiar with their clients' information systems and digital data—*including social media*—to address these issues.") (emphasis added); *Chambers v. City of Jackson, Mississippi*, No. 3:20-cv-58, 2022 WL 4072960, at *5 (S.D. Miss. Sep. 2, 2022)

\*7. However, because of the alleged flooding, rather than Defendants' conduct, Plaintiff cannot show that Defendants "acted with the intent to deprive" Plaintiff of the information's use in this litigation to warrant the most severe sanctions under Rule 37(e)(2). *See BHI Energy I Power Servs. LLC v. KVP Holdings, LLC*, 730 F. Supp. 3d 308, 326–27 (N.D. Tex. 2024) (denying spoliation sanctions under Rule 37(e)(2) after finding that, although Defendants failed to preserve certain electronic evidence, plaintiff did not prove that Defendants acted with the intent to deprive plaintiff of that evidence); *cf. Sanchez v. Thomas,* No. 1:22-cv-1197, 2024 WL 4706583, at \*6 (W.D. Tex. Oct. 9, 2024), *report and recommendation adopted*, No. 1:22-cv-1197, 2024 WL 4701909 (W.D. Tex. Nov. 5, 2024) (recommending that the District Judge instruct jury that it could presume that video footage was unfavorable to defendants in order to best cure the prejudice caused to by defendants' intentional spoliation of relevant video footage); *Balancecxi, Inc. v. Int'l Consulting*, No. 1:19-cv-767, 2020 WL 6886258, at \*14 (W.D. Tex. Nov. 24, 2020), *report and recommendation adopted sub nom. BalanceCXI, Inc. v. Int'l*

---

("Because the data requested encompasses electronically stored information ('ESI') as well as information stored in other manners, the Court relies on its inherent power and Federal Rule of Civil Procedure 37(e), which governs a party's duty to preserve ESI."); *see id* at \*6 (concluding defendant failed to institute litigation hold and preserve discovery documents that required, inter alia: "produce a copy of all communications, whether generated or stored in hard copy or electronically, sent or received by . . . any of Defendant's representatives, agents, officers, or employees regarding this Plaintiff. This request specifically includes, but is not limited to . . . mobile data . . . mobile digital computer data . . . electronic mail, and instant messages.").

*Consulting & Rsch. Grp., LLC*, No. 1:19-cv-767, 2021 WL 2194900 (W.D. Tex. Feb. 3, 2021) (recommending a default judgment be entered against the defendants on all theft of trade secrets claims where defendants' actions were intentional, repeated, concealed, and addressed to as many as ten separate devices).

Here, the Court determines that the loss of the contract and bookkeeping records have prejudiced Plaintiff from presenting "evidence essential to its underlying claim." *Coastal Bridge Co., LLC*, 833 F. App'x at 575. Rule 37(e)(1) allows the Court to "impose lesser sanctions in the form of 'measures no greater than necessary to cure the prejudice.'" *United Healthcare Servs., Inc.*, 2024 WL 1252365, at *4. As such, the Court determines that the appropriate sanction in this case under Rule 37(e)(1) is to "allow the parties to present evidence to the jury concerning the loss and likely relevance of the lost ESI"— contracts, accountings, invoices, or other bookkeeping information related to Defendants' business—"and instructing the jury that it may consider that evidence, along with all the other evidence in the case, in making its decision." *Adler*, 2023 WL 2699511, at *40 (quoting Rule 37(e) advisory committee's notes to 2015 amendments). "[O]ther courts have imposed similar sanctions when the non-spoliating party cannot show an 'intent to deprive,' and this measure serves to cure the prejudice to [Plaintiff] by having 'the jury be able to determine the weight and importance of what the lost ESI may have shown.'"

*Id.* (quoting *Wilson v. HH Savannah, LLC*, No. 420-cv-217, 2022 WL 3273714, at \*2 (S.D. Ga. July 28, 2022)) (citation modified).

"At this pretrial stage, however, the Court declines to rule on the precise scope of admissible evidence regarding the loss of the ESI, and the content of the jury instruction." *Adler*, 2023 WL 2699511, at \*41. "Courts have noted that this approach affords the district judge with flexibility to determine the scope of the spoliation evidence to be presented at trial, including any argument that may be made to the jury on this issue, and to craft any related jury instructions on a full evidentiary record." *Id.*; *United Healthcare Servs., Inc.*, 2024 WL 1252365, at \*14 (quoting the same and suggesting the district judge may wish to instruct the jury that defendant had a duty to preserve the ESI, the spoliated ESI was relevant to the claims in the case, defendant failed to take reasonable steps to preserve the spoliated ESI, and the spoliated ESI cannot be recovered); *see also Empire Torque Tools, LLC v. Specialty Welding & Turnarounds, LLC*, No. 21-cv-3274, 2023 WL 2938518, at \*2 (S.D. Tex. Mar. 27, 2023), *report and recommendation adopted sub nom. Tools v. Specialty Welding & Turnarounds, LLC*, No. 21-cv-3274, 2023 WL 2938288 (S.D. Tex. Apr. 13, 2023) (recommending a party "be permitted to present evidence of spoliation at trial, and if a jury instruction on spoliation is supported by the evidence, the district judge can decide whether to give it").

31

## III.  Conclusion

The Court previously warned Defendants that failure to comply with the Court's prior Orders could result in recommending additional sanctions under Rule 37.  (ECF 58 at 6.)  It is therefore **ORDERED** that Defendants' Motion for Reconsideration (ECF No. 62) be **DENIED** and **RECOMMENDED** that Plaintiff's Motion for Sanctions (ECF No. 59) be **GRANTED IN PART**.

The Court issues the following Orders and Recommendations:

- The Court **ORDERS** Defendants produce for inspection, to a vendor selected by Plaintiff, all social media accounts owned and controlled by Defendants and used in the regular course of Defendants' business operations.  Defendants shall reimburse Plaintiff and Plaintiff's counsel for all expenses and legal fees associated with the inspection.

- Defendants are hereby **SANCTIONED and ADMONISHED** that they shall participate in discovery in an honest, forthright, and ethical manner, including but not limited to (1) producing social media accounts for inspection; (2) producing CashApp records and non-U.S. bank records; and (3) producing complete phone records and identifying business devices.  Any further failure to comply will be referred to the District Judge for consideration of contempt sanctions.  This is a direct order, violation of which is contemptuous behavior.  Defendants' counsel shall immediately serve a copy of this Order on Espinoza.

- The Court **RECOMMENDS** that Plaintiff is entitled to an adverse inference jury instruction permitting the factfinder to presume that the withheld discovery, specifically (1) social media accounts; (2) CashApp records and bank records; and (3) phone records, would have been unfavorable to Defendants.

- The Court **ORDERS** Defendants to reimburse Plaintiff $3,500.00 **within 21 days of this Order** to the extent they have not already done so.

- The Court **RECOMMENDS** that Plaintiff be permitted to present evidence of spoliation or failure to produce at trial with respect to contracts and bookkeeping records, and if a jury instruction on spoliation is supported by the evidence, the District Judge can decide whether to give it and its scope.

- Any motion in limine seeking to exclude evidence of Defendants' failure to preserve contracts, accounting records, invoices, or other bookkeeping information related to Defendants' business after the Agreed Preliminary Injunction was issued, is **DENIED**.

- The Court **ORDERS** Defendants to pay Plaintiff's reasonable attorney's fees caused by their failure to provide discovery. The attorney's fees consist of Plaintiff's reasonable attorney's fees in preparing and presenting the instant Motion for Sanctions (ECF No. 59). After discovery has closed, Plaintiff must submit a single consolidated application, complete with adequate documentation, that substantiates the fees authorized in this Order. The Court will then determine the appropriate amount.

The Clerk shall send copies of this Memorandum, Recommendation, and Order to the respective parties who have fourteen (14) days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

**SIGNED** in Houston, Texas on October 21, 2025.

Richard W. Bennett
United States Magistrate Judge

33