United States District Court
Southern District of Texas

**ENTERED**

February 26, 2026

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| VIANN'K MANSUR LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. H-23-2914 |
| | § | |
| ESTILOISABELLA LLC, | § | |
| AND JACQUELINE G ESPINOZA, | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM AND ORDER

Pending is Plaintiff Viann'K Mansur LLC's Motion for Summary Judgment as to Liability Only (Document No. 61). After carefully considering the Motion, Defendants' Response, Plaintiff's Reply, and applicable law, the Court concludes the Motion must be DENIED:

I.    Background

The parties in this case sell elaborate ball gowns for quinceañera parties, the celebration of a Latin American girl's fifteenth birthday. According to Plaintiff's Complaint, in 2014 Mexican designer Vianney de Aquino Chalchi formed Viann'K Mansur LLC to sell these dresses in Mexico and the United States. Document No. 1 at 5, 10. Shortly thereafter, Plaintiff hired Defendant Jaqueline Espinoza. Id. For two years Defendant Espinoza was Plaintiff's primary representative in the United

States and was responsible for all marketing, sales, and administrative work. Id. at 10-11. At Plaintiff's direction, Defendant Espinoza's husband also filed the legal paperwork for the company. Document No. 64 at 4. But in 2016, the relationship fell apart and Plaintiff terminated Defendant Espinoza. Document No. 1 at 10. Sometime thereafter Defendant Espinoza started her own quinceañera business, EtiloIsabella LLC.

According to Plaintiff, Defendant EtiloIsabella LLC began advertising and selling copies of Plaintiff's "Leonora Dress" (a light blue gown with pink floral surface designs) and "Golden Train Dress" (a crimson gown with gold sequin appliqués). Plaintiff did not obtain copyright registration on the protectable elements of these dresses until May 2023, after the alleged infringements occurred and very shortly before filing this suit. Document No. 1-4. Defendants deny any copying because the dresses were sourced from a Chinese manufacturer and the protectable elements are not exactly or substantially the same as Plaintiff's version.

Plaintiff also claims that Defendants misappropriated the trademark "Viann'K Mansur." Plaintiff did not register this trademark until September 2024, nearly a year after filing this suit. Document No. 61-1. Throughout 2022 and early 2023, Defendant EtiloIsabella LLC's social media accounts featured posts depicting allegedly infringing dresses advertised with various derivatives of "#viannkmansurexclusive." See Document No. 61 at

12 & n.12.  Defendants do not dispute these posts or the hashtags but respond that they acted in the reasonable belief that they had authority to use the mark due to various permissions Plaintiff had previously given.  Document No. 64 at 5.

Plaintiff filed this suit in August 2023 alleging Copyright Infringement; Federal Unfair Competition, False Designation of Origin and False Advertising; Common Law Trademark Infringement and Unfair Competition; and Contributory and Vicarious Copyright Infringement.  Document No. 1.  On February 5, 2024, the Court granted a Joint Motion for an Agreed Preliminary Injunction, with which Defendant has fully complied.  Document No. 22.  Nonetheless, Plaintiff has prosecuted this case as if the parties were engaged in a cockfight to the death.  A long series of discovery disputes ensued.  In time, Defendants' counsel withdrew, and later, Defendants' successor counsel also withdrew.  With past due fees owed to former counsel, Defendants could no longer afford to retain new counsel.  Because Defendant EtiloIsabella LLC was no longer represented by counsel, the Court granted Plaintiff's Motion for Default against that business entity.  Document No. 83.  Plaintiff moves for Summary Judgment as to Liability Only, asserting that she is entitled to judgment on all claims.  Document No. 61.

## II.  Standard of Review

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986) (internal quotation marks omitted).

In considering a motion for summary judgment, all inferences to be drawn from the underlying facts "must be viewed in the light most favorable" to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986) (quoting United States v. Diebold, Inc., 82 S. Ct. 993, 994 (1962)). "If the record, viewed in this light, could not lead a rational trier of fact to find for [the nonmovant]," then "summary judgment is proper." Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993). "If, on the other hand, the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." Id. The court must consider the cited materials and may also consider other materials in the record. FED. R. CIV. P. 56(c)(3). However, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to

4

support a party's opposition to summary judgment." Ragas v. Tenn. Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998) (quoting Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992), opinion corrected on other grounds (Mar. 26, 1992), cert. denied, 113 S. Ct. 98 (1992)).

Where the movant also bears the burden of proof at trial, "he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." Fontenot v. Upjohn Co., 780 F.2d 1190, 1194 (5th Cir. 1986); *see also* United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Ctys. in State of Ala., 941 F.2d 1428, 1438 (11th Cir. 1991) ("When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it 'must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial.'" (quoting Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2557 (1986) (Brennan, J., dissenting))). "Where the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented." FED. R. CIV. P. 56 advisory committee's note to 1963 amendment.

5

III. <u>Analysis</u>

As an initial matter, Plaintiff contends that the facts presented in its Rule 36 Request for Admissions are deemed admitted and present the Requests as conclusively established evidence. Document No. 61 at 8.  Pursuant to FED. R. CIV. P. 36(a), "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney."  According to Plaintiff, Defendants responded to the Rule 36 Requests "more than twenty days late and without any agreed extension."  Document No. 61 at 8.[1]  Plaintiff's Rule 36 Requests, including a certificate of service dated March 12, 2024, are appended to its Motion.  Document No. 61-2 at 2.  The summary judgment record, however, does not include either proof of Defendants' allegedly late response or other evidence establishing that Defendants did in fact miss the 30-day deadline.[2]  For their part, Defendants do not respond on

---

[1] In accordance with Local Rule 5.4, neither Plaintiff's Requests for Admissions nor Defendants' responses were filed with the clerk.

[2] Rather than compile comprehensive exhibits in support of summary judgment, Plaintiff relies largely on pleadings on matters attached to previous motions filed during the long and voluminous history of this case.  The Motion, however, does not cite any evidence concerning the timeliness of Defendants' Rule 36 response.  "Judges are not like pigs, hunting for truffles buried in the record." <u>United States v. del Carpio Frescas</u>, 932 F.3d 324,

this question.   Moreover, if Defendants' responses were tardy by 20 days or so, Defendants could move to withdraw the allegedly deemed admissions, which the Court is authorized to permit.  *See* FED. R. C. P. 36(b).  Indeed, in a case like this, the rule favors withdrawal of improvident admissions in order to promote the presentation of the merits of an action.   <u>Id.</u>   Regardless, Plaintiff's unsupported allegations do not satisfy Plaintiff's evidentiary burden under FED. R. CIV. P. 56(c).  *See* <u>Hughey v. CVS Caremark Corp.</u>, 629 F. App'x 648, 651 (6th Cir. 2015).  Plaintiff's putative deemed admissions have not been conclusively established in the evidence.

Because the movant also bears the burden at trial, Plaintiff must establish that there is no genuine issue of disputed of fact as to every element of its claims for Copyright Infringement; Federal Unfair Competition, False Designation of Origin and False Advertising;  Common  Law  Trademark  Infringement  and  Unfair Competition;  and  Contributory  and  Vicarious  Copyright Infringement.  First, to obtain summary judgment on its Copyright Infringement  claims,  Plaintiff  must  show: (1)  Plaintiff  owns  a valid copyright (2) that Defendants factually copied and (3) there is substantial similarity between the copyrighted work and the

---

331 (5th Cir. 2019) (quoting <u>Albrechtsen v. Bd. of Regents of Univ. of Wisconsin Sys.</u>, 309 F.3d 433, 436 (7th Cir. 2002)).

allegedly infringing product.  *See* Nola Spice Designs, L.L.C. v. Haydel Enters., Inc., 783 F.3d 527, 549 (5th Cir. 2015).  Here, even if Plaintiff were able to prove conclusively the first two elements, which is doubtful on this record, summary judgment is not appropriate because of a genuine fact dispute exists as to the substantial similarity of the works.

"Typically, the question whether two works are substantially similar should be left to the ultimate factfinder," and summary judgment is only appropriate if no reasonable juror could find for the nonmoving party.  Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 142 (5th Cir. 2004) (per curiam).  The Fifth Circuit, so far as this Court can determine, has not ruled on how to approach this inherently fact-based element in the context of a plaintiff's summary judgment motion.  But Texas district courts have adopted the approach of other circuits, finding that there is no dispute of fact as to substantial similarity only "when the works are so *overwhelmingly identical* that no reasonable juror could reach a different conclusion."  Stokes v. Carcavba, LLC, 720 F. Supp. 3d 484, 496-97 (W.D. Tex. 2024) (emphasis added) (granting summary judgment for a plaintiff and finding substantial similarity between two photographs because, though the background had been replaced, the protectable elements of the work were an exact match); *see also* Wareka v. JW Sanders PLLC, 2024 WL 1978076, at *5

(W.D. Tex. May 3, 2024) ("[A]side from some slight cropping, [the works] are the *exact same*.") (emphasis added).

In contrast, when comparators are not overwhelmingly identical or exact matches or the differences edge beyond the superficial, summary judgment is not appropriate because a reasonable juror could find no infringement. For example, the Ninth Circuit recently upheld a jury's finding that the following photograph and tattoo were not substantially similar:



*Sedlik v. Von Drachenberg*, 163 F.4th 667, 673-74 (9th Cir. 2026). Here, where Plaintiff is asking the Court to find infringement as a matter of law, the summary judgment evidence must show that, save for superficial differences, the protectable elements of Plaintiff's dresses are identical to those on Defendants' dresses.

Both parties agree that the only protectable elements of Plaintiff's dresses are the surface design elements--*i.e.* the sequin or floral appliqués that adorn the dresses. Thus, it is

the placement and shape of the sequin or floral appliques that must be substantially similar--the color, cut, shape, or dimensions of the dresses themselves are not relevant. *See* Star Athletica, L.L.C. v. Varsity Brands, Inc., 137 S. Ct. 1002, 1007, 1012 (2017). Plaintiff contends that Defendants made "literal copies" of the surface designs on the Lenora Dress and the Golden Train Dress. The evidence, however, belies that argument.

First, the pleadings contain no comparable photographs of the Lenora Dress that are taken at the same or even similar angles or with enough clarity to enable a substantial similarity analysis.[3] *Compare* Document No. 1 at 8 (single photo showing a front view of the Lenora Dress top), *with* id. at 15-17 (photos of the allegedly infringing dress with the front view obstructed or taken at incomparable angles). In addition, Plaintiff's contention that Defendants' deposition conclusively establishes similarity is without merit. Defendant Espinoza expressly testified that "[i]t's not exactly the same dress" and that the differences relate to the floral appliques, which are the only protectable elements of the Lenora Dress. *See* Document No. 44-9 at 225:6-12.

---

[3] Plaintiff does not cite any specific photographic evidence or attach any such photos to its Motion. Instead, Plaintiff merely references "the side by-side comparison provided in Plaintiff's live pleadings." *See* Document No. 61 at 7. Unsworn pleadings are not competent summary judgment evidence. Johnston v. City of Houston, Tex., 14 F.3d 1056, 1060 (5th Cir. 1994). Even so, the photos in Plaintiff's Complaint do not reflect near-identical similarity.

As for the Golden Train Dress, the pleadings contain only one set of images for comparison:

| Golden Train Dress | Allegedly Infringing Dress |
|---|---|
|  | |

Document No. 1 at 9, 14.  The above dresses both feature sequin appliqué edging along a split train with a similar color and dress shape, but the designs are far from identical.  The Golden Train Dress has single-pointed crenelated edging with deep negative space and additional sequinning on the flounce layers on the sides of the dress.  The allegedly infringing dress, on the other hand, has much thicker double-pointed edging with wide scalloped edges and while there is additional sequinning on the train itself, the layered flounces appear unadorned.  In other words, these dresses

11

are not "so overwhelmingly identical that no reasonable juror could reach a different conclusion." Stokes, 220 F. Supp. 3d at 496-97. Plaintiff is not entitled to summary judgment on Plaintiff's Copyright Infringement and Contributory and Vicarious Copyright Infringement claims.

Plaintiff also claims that Defendants infringed on Plaintiff's "Viann'K Mansur" trademark under both federal and state common law. "A trademark infringement action under Texas common law is analyzed in the same manner as a Lanham Act claim." Viacom Int'l v. IJR Cap. Invs., L.L.C., 891 F.3d 178, 184 (5th Cir. 2018). Because Plaintiff did not obtain a registered mark until after the alleged infringement occurred, it must establish infringement by showing that (1) Plaintiff owns a legally protectable mark and (2) Defendants' use of the mark creates a likelihood of confusion as to source, affiliation, or sponsorship. See Viacom, 891 F.3d at 185. Defendants do not dispute that Plaintiff owns a legally protectable mark. Document No. 64 at 5.

"To establish a likelihood of confusion, [Plaintiff] must show 'a probability of confusion, which is more than a mere possibility of confusion.'" Viacom, 891 F.3d at 192 (quoting Elvis Presley Enters., Inc. v. Capece, 141 F.3d 188, 193 (5th Cir. 1998)). Courts assess the likelihood of confusion with what is known as the "digits of confusion," a non-exhaustive list of relevant factors including:

(1) the type of mark allegedly infringed, (2) the similarity between the two marks, (3) the similarity of the products or services, (4) the identity of the retail outlets and purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, ... (7) any evidence of actual confusion[,] ... [and] (8) the degree of care exercised by potential purchasers.

Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc., 851 F.3d 440, 453 (5th Cir. 2017) (internal quotation marks omitted). Here, the first three factors weigh in Plaintiff's favor, the fourth and fifth factors are unsupported by evidence and thus neutral, and the last three factors weigh in Defendant's favor.

First, "Viann'K Mansur" is the kind of inherently distinctive mark that routinely weighs the first factor towards finding a likelihood of confusion. See Exxon Corp. v. Texas Motor Exch. of Houston, Inc., 628 F.2d 500, 504 (5th Cir. 1980) ("A strong trademark is one that is rarely used by parties other than the owner of the trademark," and "the more distinctive a trademark, the greater its 'strength.'"). "Viann'K Mansur" is a derivative of Plaintiff's name combined with an Arabic word meaning "victorious." Document No. 6-1 at 1-2.

Second, while there is no allegation that Defendants used "Viann'K Mansur" as their own company name, Defendants' use of "#viannkmansurexclusive" and other derivatives to advertise Defendants' dresses reflect a similarity that more likely than not satisfies the second factor. See Xtreme Lashes, LLC v. Xtended Beauty, Inc., 576 F.3d 221, 228 (5th Cir. 2009) ("Even if two marks

13

are distinguishable, we ask whether, under the circumstances of use, the marks are similar enough that a reasonable person could believe the two products have a common origin or association.").

And third, there is no dispute that both parties sell elaborate ball gowns designed for quinceañeras. *See* Streamline Prod., 851 F.3d at 454. The first, second, and third factors weigh in favor of finding a likelihood of confusion.

Under the fourth factor, Plaintiff concedes that the retail outlets are distinct but argues that both parties target the same purchasers. Document No. 61 at 14. While some overlap of purchasers can be inferred based on the niche industry targeting Latina teenagers, the evidence reflects at least one pronounced difference--Defendants also market to customers who have very young children around five years old. *See* Document No. 44-7 at 4. Plaintiff has not alleged that it targets similarly young purchasers or sells similar "miniature" sized products. Age differences among customers can constitute "substantial dissimilarities." Viacom, 891 F.3d at 194-95. Plaintiff has not offered any proof on "how much the identity of consumers and purchasers would overlap" and thus the fourth factor "cannot be gauged adequately." *See* id.

Likewise, the fifth factor--the identity of advertising media used--is indeterminable based on this record. The only evidence that Plaintiff cites is its own Unsworn Declaration. *See* Document

14

No. 61 at 14 (citing Document No. 6-1). That Declaration describes Defendant's advertising in great detail, but it does not describe how and where *Plaintiff* advertises its products. *See* Document No. 6-1. Comparison of advertising media is not possible without examples from both sides. And even where advertising media may have "substantial overlap in the abstract, without specific advertising content, [factor] five does not weigh in favor of a likelihood of confusion." Viacom, 891 F.3d at 195. The fourth and fifth factors are neutral.

Defendants strongly dispute the sixth factor--Defendants' intent. Under this factor, Plaintiff must show that Defendant "intended to derive benefits from the reputation of" Plaintiff such as making "efforts to pass off its product as that of [Plaintiff's]." Streamline Prod., 851 F.3d at 455-56 (internal quotation marks omitted). Here, Plaintiff argues that Defendants intended to capitalize on the "Viann'K Mansur" name because as a former employee, Defendant Espinoza is "uniquely aware" of the quinceañera market and Plaintiff's reputation. Document No. 61 at 15. "But mere awareness of the senior user's mark does not establish bad intent." Streamline Prod., 851 F.3d at 456 (internal quotation marks omitted).

On the other hand, Defendants argue good faith intent based on a reasonable belief that they had Plaintiff's permission to use the mark. Defendant Espinoza testified that she believed she was

15

entitled to the "Viann'K Mansur" mark because "back in the days, we went and we registered that name under my husband, with [Plaintiff's] permission." Document No. 44-9 at 155:15-19. She also testified that Plaintiff verbally bestowed ownership of the mark upon Defendants and Defendants acted in reliance on that promise. Id. ("And when [Plaintiff] left to Mexico, she say that we can keep that name. We can keep the debts, too."). Defendants paid taxes, rent, and electricity bills on behalf of the Viann'K Mansur brand. Id. at 155:21-23. Taking the evidence in the light most favorable to Defendants, there is a genuine dispute as to whether Defendants had a good faith belief, even if mistaken, that they had permission to use the Viann'K Mansur name. The sixth factor weighs against finding a likelihood of confusion.

The seventh factor, actual confusion, requires "'more than a fleeting mix-up of names'; rather it must show that "[t]he confusion was caused by the trademarks employed and it swayed consumer purchases.'" Streamline Prod., 851 F.3d at 457 (quoting Xtreme Lashes, 576 F.3d at 230). Plaintiff's bare attempt to show actual confusion is in the deposition testimony of one of Defendants' customers, Ms. Yayma Hernandez.[4] Even here Plaintiff concedes that Ms. Hernandez's testimony is not direct evidence of

---

[4] Plaintiff took Ms. Hernandez's deposition without the presence of opposing counsel and Plaintiff has not shown that Defendants had reasonable notice of it. See Document No. 44-7 at 3, 28:23-25; see also, FED. R. CIV. P. 32(a)(1).

actual confusion but argues that there is a general consumer awareness of "Viann'K Mansur" which in turn implies the abstract possibility of confusion. Document No. 61 at 16. Not only is that inference too attenuated to satisfy Plaintiff's evidentiary burden, but the deposition testimony proves the opposite. Ms. Hernandez testified that, although she considered making an appointment with Plaintiff, she decided instead to purchase a dress from Defendants after viewing Defendants' social media post. Document No. 44-7 at 25:9-26:1. Nothing in her testimony indicates that at the time of purchase Ms. Hernandez was confused or believed she was purchasing a dress designed by Plaintiff. On the contrary, Ms. Hernandez's conscious choice of Defendants' brand over Plaintiff's brand implies her actual *awareness* of two distinct brands. The seventh factor weighs against finding a likelihood of confusion.

The eighth and final factor is the degree of care exercised by potential purchasers. Buyers tend to take more care (and thus are less likely to be confused) when the items are expensive or the purchasing process is more involved. Streamline Prod., 851 F.3d at 458. Quinceañera dresses are relatively expensive items of custom clothing and purchasing one requires making an in-person appointment with the seller. *See* Document No. 44-7 at 25:9-26:1. This indicates that purchasers are informed and deliberative buyers, which weighs against finding a likelihood of confusion.

17

There is thus a genuine dispute of material fact concerning the likelihood of confusion.

In sum, Plaintiff's claims involve many fact-intensive inquiries on which summary judgment is appropriate only if Plaintiff shows "beyond peradventure *all* of the essential elements." *See* <u>Fontenot v. Upjohn Co.</u>, 780 F.2d 1190, 1194 (5th Cir. 1986). This sparse summary judgment record does not satisfy that burden. Genuine issues of material fact remain to be tried on each of Plaintiff's claims for Copyright Infringement; Federal Unfair Competition, False Designation of Origin and False Advertising; Common Law Trademark Infringement and Unfair Competition; and Contributory and Vicarious Copyright Infringement.

ORDER

Accordingly, it is

ORDERED that Plaintiff Viann'K Mansur LLC's Motion for Summary Judgment (Document No. 61) is DENIED.

The Clerk will enter this Order, providing a correct copy to all counsel of record and to each Defendant at her/its last known address.

SIGNED at Houston, Texas, on this 26TH day of February, 2026.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE